**STATE of Iowa, Appellee,**

v.

**Gerald BELL and Donna Bell,
Appellants.**

**No. 56463.**

Supreme Court of Iowa.

Nov. 13, 1974.

Lee J. Farnsworth, Denison, for appellants.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and Thomas R. Eller, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

These separately indicted defendants were jointly tried for the crime of assault with intent to inflict great bodily injury in violation of § 694.6, The Code. Following convictions on May 4, 1973, each defendant was sentenced to a term not to exceed one year in a reformatory.

Defendants Gerald and Donna Bell are husband and wife. The victim of the alleged assault was their three-year-old daughter, Kari, who has cerebral palsy.

Kari was born two months prematurely on February 5, 1970. Her legs are affected by her illness. She has some difficulty walking and controlling her movements.

February 16, 1973, a social caseworker and the county nurse went to the Bell home. Kari was frail and much thinner than when the caseworker had seen her at age one and one-half years. She had bruises on both cheeks, the forehead, and a thumb. A still-bleeding cut on her chin was covered with a band-aid. There was a large, spongy black bruise on the back of Kari's head extending almost ear to ear.

Two upper front teeth were missing. Her abdomen was rigid and her eyes sunken.

Over the Bells' protest, Kari was taken to the local hospital. A nurse there observed dark bruises over the child's entire genital area. The next day she was taken to University of Iowa Hospital, where she had received prior treatment for her cerebral palsy. She was there examined by Dr. Barter, who noted the bruises above described and found additional bruises on her back and extremities. Kari weighed 22 pounds. X-rays disclosed a rib fracture and a compression fracture of the first lumbar vertebra. These fractures, though healed, were not apparent on an examination one year earlier.

Principal witnesses for the State were Mr. and Mrs. Kruse, defendants' long-time friends. Mrs. Kruse testified that on February 15, 1973 she observed Donna repeatedly strike Kari's hand, which was on a hardwood floor, with a segment of molding board. She also saw Donna pick Kari up by the abdomen and diapers and "slam" her down several times on the floor. Both Kruses testified they had seen Gerald strike Kari with his fist on two occasions in the mouth prior to February 15, 1973. On one occasion she fell backwards and hit her head on a mopboard. Both these witnesses said defendants frequently referred to Kari as "the little bitch."

Defendants asserted Kari's injuries were caused by falls resulting from her disability, and from therapy administered by Donna pursuant to instructions from University Hospital. Significantly, their detailed explanations of how Kari's injuries were accidentally sustained were in some instances inconsistent one with the other and also irreconcilable with statements by Donna to the social worker and county nurse on February 16.

Both Dr. Barter and another medical expert expressed unequivocal opinions that damage to Kari's genital area could not have been caused by the palsy therapy.

Leona Bell, Gerald's mother, testified for defendants. In response to cross-examination questions to which no objections were lodged she conceded she had complained to the county health nurse and social workers several times concerning Kari's treatment. The foster mother in whose home the child was placed on March 7, 1973 testified without trial objection the child handled herself very well, fell but seldom, and had sustained no injuries while in her care.

Alleged trial court errors asserted by defendants and worthy of consideration are consolidated and treated in the following divisions.

I. *Motions with respect to testimony.*

Each defendant filed "Motion to Strike Surplusage" seeking to "strike from the indictment", for various reasons, certain specified "testimony" of designated witnesses. This "testimony" was related to Kari's physical condition before and after the alleged assaults, prior instances of alleged abuse, and prior injuries. In overruling the motions, trial court clearly indicated to defense counsel he was not expressing an opinion as to the ultimate admissibility of such evidence, if and when offered in course of trial.

At trial the vast bulk of this testimony came in without objection. After both parties rested, defense counsel renewed the above motions and specifically moved to "withdraw the evidence" of four named State's witnesses. These were overruled.

 With respect to the first motion, it should be observed we have never strictly limited the testimony of witnesses to the contents of the minutes. State v. Lanphear, 220 N.W.2d 618, 621 (Iowa 1974). Nor are the minutes either testimony or evidence. At best, defendants' pre-trial motions to strike testimony could be construed as motions in limine. A ruling which denies a motion in limine cannot be the basis for appeal. See State v. Garren, 220 N.W.2d 898, 899 (Iowa 1974).

Applicable to the second motion are our cases holding a motion to strike or withdraw evidence is not timely where it came in without objection and the grounds of the motion should have been apparent before it was made. State v. Bruno, 204 N.W.2d 879, 887 (Iowa 1973); State v. Boose, 202 N.W.2d 368, 369 (Iowa 1972).

We find no trial court error with respect to the above motions.

## II. *Motions for directed verdict.*

Defendants assign as error denial of their motion for directed verdict at close of State's evidence, and at the close of all evidence, grounded on State's failure to produce credible evidence of illegal assault or the requisite intent on the part of either defendant.

On an appeal challenging sufficiency of the evidence the court views the evidence in the light most favorable to the State and accepts all reasonable inferences tending to support the verdict. The cause should be submitted to the jury if there is any substantial evidence reasonably supporting the charge. Only evidence which would support the verdict need be considered. State v. Graham, 221 N.W.2d 258, 259–260 (Iowa 1974).

In this type of case our principles of substantive law are well established. The gist of the crime of assault with intent to commit great bodily injury is the intent, which is seldom capable of direct proof and ordinarily is disclosed by all the circumstances attending the assault, together with all relevant facts and circumstances disclosed by the evidence. State v. Petsche, 219 N.W.2d 716, 717 (Iowa 1974); State v. Decklever, 172 N.W.2d 109, 110 (Iowa 1969). This intent may be, and of necessity must be, in most cases, established circumstantially. State v. Schumann, 187 Iowa 1212, 1215, 175 N.W. 75, 76 (1919).

The crime may be committed without any physical injury to the victim, State v. Crandall, 227 Iowa 311, 316, 288 N.W. 85, 88 (1939), although the extent of injury may be taken into consideration in determining defendants' intent, State v. Petsche, supra at 717; State v. Grimm, 206 Iowa 1178, 1180, 221 N.W. 804, 806 (1928). Nor is a dangerous weapon in the usual context of the term required. State v. Tornquist, 254 Iowa 1135, 1147, 120 N.W.2d 483, 491 (1963) ("Little discernment is required to conclude that the fist, or indeed the hand, of a strong man may readily kill a small four year old child"); State v. Grimm, supra, 206 Iowa at 1180, 221 N.W. at 806 ("Assault to do great bodily injury is not circumscribed or limited *per se* by the fact that the accused at the time of the assault used simply his fists").

Parents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness. State v. Fischer, 245 Iowa 170, 176–178, 60 N.W.2d 105, 108–109 (1953); 6 Am.Jur.2d, *Assault and Battery* § 47, pp. 44–45; see generally Annot., 89 A.L.R.2d 396 (1963). Abusive punishment which does not meet this test annuls the parental privilege and subjects the parent to applicable criminal statutes. See State v. Tornquist, supra; State v. Fisher, supra; State v. Bitman, 13 Iowa 485 (1862).

Acts of defendant Donna Bell on February 15, 1973, viewed in the light of all the circumstances, including the frailty and disabilities of Kari, certainly generated a jury question as to her intent to inflict great bodily injury.

There is no proof defendant Gerald Bell assaulted Kari on February 15, 1973, the date indicated in this indictment. Of course, in this case there was no necessity for any date to be specified. Section 773.9, The Code. The date or dates fixed in the indictment for the commission of a crime are not material, and a conviction can be returned upon any date within the limitation statute, if there is no fatal variance between the indictment allegations and the proof offered. State v. Hardesty, 261 Iowa 382, 393, 153 N.W.2d 464, 471 (1967).

Minutes of testimony attached to the indictment refer to instances of this defendant striking Kari on the head with his fists within the month prior to February 15. There is no indication Gerald was misled or hindered in his trial preparation. In any event, neither below nor here does this defendant assert a "fatal variance" or any error based on the difference between the date in the indictment and the dates of the assaults developed by the proof.

There was direct evidence Gerald struck Kari in the head with his closed fist on January 15, 1973, after she had removed the head from a doll. She fell back and hit her head on the mopboard. On a later occasion in the latter part of January he struck Kari "along side of the face" with his partially closed fist for spilling a small glass of water at mealtime. The force of these blows was demonstrated in various ways to the jury by the Kruses, who described the blows as "hard," and "cracked loud."

Gerald's sister-in-law testified without objection this 195 pound man at a family gathering threatened Kari with a "knuckle sandwich" if she failed to eat, and hit her when she then appeared to be about to cry.

Under this evidence, the issue of his intent was plainly one for jury determination.

As to both defendants, the motion for directed verdict was properly overruled.

### III. Instruction on credibility of witnesses.

■■■ Defendants now complain instruction 6 (permitting the jury to consider the bias and prejudice of witnesses) erroneously singled out defendants because, among the defense witnesses, they had the strongest motive to lie. This instruction, they contend, thus violated the rule laid down in State v. Bester, 167 N.W.2d 705 (Iowa 1969).

We do not reach the questionable merits of this complaint because defendants did not object or except to the giving of instruction 6, nor was the subject raised in their motion for new trial. Defendants

have waived this alleged error. State v. Willer, 218 N.W.2d 605, 607 (Iowa 1974); State v. Pardock, 215 N.W.2d 344, 346–347 (Iowa 1974).

### IV. Instruction on reasonable doubt.

The State concedes trial court gave the same instruction on reasonable doubt we held erroneous in State v. Boyken, 217 N.W.2d 218 (Iowa 1974), but argues defendants at trial failed to object with sufficient specificity.

Defendants' trial exception asserted this instruction was "prolix, involved, too long, and has a tendency to confuse the jury."

■■■ Objections to instructions must be sufficiently specific to alert trial court to any alleged error to be corrected. State v. Boyken, supra at 219; State v. Hraha, 193 N.W.2d 484, 486 (Iowa 1972). In our view, defendants' objection did not meet this test. See State v. Brandt, 182 N.W.2d 916, 917–918 (Iowa 1971).

### V. Order for witness fees.

■■■ After this appeal was taken, trial court entered an ex parte order on county attorney's application, directing payment of $100 to a medical expert and a day's pay and mileage to Melvin Kruse for his attendance at the second day of trial at the State's request.

Defendants assign as prejudicial error not the order, but failure to disclose to defense counsel a claimed pre-existing agreement to pay Kruse. This information, it is asserted, should have been available to defendants when Kruse was under cross-examination. No authority is cited by defendants.

Further, there is nothing in the record before us, including the post-trial order, which indicates there was such an agreement between the State and Kruse. In the absence of such evidence, we need not consider this complaint.

### VI. We have carefully considered all other issues raised by defendants, and find no error.

Accordingly, these convictions are affirmed.

Affirmed.