STATE of Iowa, Appellee,

v.

Richard CHATTERSON, Appellant.

No. 59666.

Supreme Court of Iowa.

Nov. 23, 1977.

Paul E. Pfeffer, Clinton, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen., and G. Wylie Pillers III, County Atty., for appellee.

Submitted to MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

Defendant, Richard A. Chatterson, appeals from judgment on jury verdict finding him guilty of assault with intent to maim, Section 694.7, The Code 1975. We affirm.

A brief factual statement will suffice for purpose of this review. The victim was Rose Morris, eighteen month old daughter of Shirley Morris (Shirley), with whom Chatterson was living at time of the assault.

Monday, November 17, a social worker helped Shirley take Rose to a pediatrician for a routine checkup. Neither this aiding party nor the doctor noticed any bruises, bite marks, or other evidence of brutality on the child.

The following Wednesday Shirley and another of her children were taken to Davenport by a Clinton "home teacher" who noticed, upon arriving at the home, Rose had several facial bruises and head injury marks and the child was not moving around. Rose was left with Chatterson while the mother and teacher were in Davenport. When Shirley returned later the same afternoon she observed the child was limp and could not be awakened. Other witnesses noted the little girl's deteriorating condition throughout the week. Saturday, November 22, Rose was taken to a Clinton hospital and later transferred to University Hospitals at Iowa City.

Although some witnesses testified they had seen Chatterson spank, slap, and otherwise mistreat Rose during the week of November 17, it appears no one saw him assault the child within that time span with such force or frequency as to account for all the bruises, bite marks, and internal injuries she suffered. There is, however, substantial testimony disclosing Chatterson had abused Rose on numerous prior occasions by hitting her head on the floor and against a wall, and striking her with his fist.

Three physicians testified concerning the nature and extent of Rose's injuries, and two of them opined the harm occurred within a few days immediately preceding her hospitalization. A motion picture taken by police officers March 22, 1976, was presented in evidence to show long-term effect of the child's injuries. Photographs taken at University Hospitals in Iowa City were also introduced. All of this evidence was admitted over Chatterson's cumulative and prejudicial objections. In addition, defendant unsuccessfully moved for a mistrial on the same basis.

At close of the State's case defendant moved for a directed verdict based upon alleged absence of evidence of (1) maiming; (2) intent; and (3) any assault on November 21, 1975, the date specified in the information.

Chatterson presented no evidence but renewed his directed verdict motion, again overruled. He later voiced timely objections to several proposed instructions.

The jury found defendant guilty of "assault with intent to commit a felony, namely to maim."

Thereafter Chatterson moved for a new trial, repeating those contentions voiced earlier by his directed verdict and mistrial motions, at the same time reiterating his objections to some jury instructions given. The motion was overruled and judgment entered.

Reduced to bare essentials these are the issues here raised:

(1) Was evidence as to the extent of Rose's injuries inadmissibly cumulative, inflammatory and unduly prejudicial?

(2) Did trial court err in overruling Chatterson's directed verdict motion premised in large part upon insufficient proof of assault with intent to maim?

(3) Did trial court err by instructing the jury with regard to the involved offense?

(4) Did the sentence imposed exceed that statutorily permitted for the crime of which he was found guilty?

I. This, as stated by Chatterson, is his first assigned error:

"That the court erred in overruling defendant's motion for mistrial and motion to exclude witness, Dr. Nordin, for the reason it was cumulative and prejudicial and inflammatory in nature as to outweigh its probative value in that ample evidence consisting of testimony by two doctors and movies and photos as to the child's injury had been given."

Defendant's composite supportive argument will accordingly be entertained, albeit briefly.

In sequential order, Dr. Stoner examined Rose at the hospital in Clinton and testified as to the child's semi-comatose condition.

Suspecting brain damage Dr. Stoner referred the child to University Hospitals at Iowa City. There Rose was initially examined by Dr. McDonnell, whose testimony focused upon the "Battered Child Syndrome" as related to observed bruises, bite marks and the girl's listless condition. The next professional called, over defendant's pretestimonial "cumulative and inflammatory" motion to exclude and subsequent objection, was Dr. Nordin who, with Dr. McDonnell, had treated the child. Both of these experts described the multiple manifestations of injury found on Rose's entire body. Moreover, Dr. Nordin opined the child had sustained head injuries which were permanent and caused "some mild damage to her intellect". All this was buttressed by a movie of Rose taken on March 22, 1976, which revealed a disfunction of the child's left side. The movie was displayed to the jury over Chatterson's "irrelevant, immaterial and prejudicial" objection.

Discussion will serve no useful purpose. The present assignment affords defendant no basis for appellate relief. See generally *State v. Burrell*, 255 N.W.2d 119, 123 (Iowa 1977) (opinion evidence); *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977) (opinion evidence); *State v. Fryer*, 243 N.W.2d 1, 7 (Iowa 1976) (photographs); *State v. Hummell*, 228 N.W.2d 77, 83 (Iowa 1975) (photographs); *State v. Maxwell*, 222 N.W.2d 432, 435 (Iowa 1974) (cumulative evidence); *State v. Youngbear*, 202 N.W.2d 70, 71 (Iowa 1972) (cumulative evidence and photographs); *People v. La Vergne*, 64 Cal.2d 265, 49 Cal.Rptr. 557, 411 P.2d 309, 313 (1966) (motion pictures); 3 Jones on Evidence, § 17:52, at 359–361 (Gard. 6th ed. 1972) (movies); McCormick on Evidence, § 214, at 530 (2d ed. 1972) (photographs and movies); cf. *State v. Proulx*, 252 N.W.2d 426, 431 (Iowa 1977) (video tape and repetitive evidence on rebuttal).

 No abuse of discretion attended trial court's admission of the above described evidence.

II. Next, did trial court err in overruling Chatterson's directed verdict motion? As to this issue defendant avers the State failed to prove: (1) the alleged assault occurred on or about November 21, 1975, and (2) commission of an act sufficiently severe to constitute the crime charged.

The first above stated claim is utterly devoid of merit. See *State v. Bell*, 223 N.W.2d 181, 184 (Iowa 1974). So we proceed to the second contention.

Our scope of review as to alleged error in overruling a directed verdict motion is articulated in *State v. Watson*, 242 N.W.2d 702, 705 (Iowa 1976). It need not be here repeated.

Section 694.7 makes it a felony to assault another with intent to maim, the elements thereof being: (1) an assault, with (2) specific intent to maim. Cf. *State v. Bell, supra; State v. Gillespie*, 163 N.W.2d 922, 923–924 (Iowa 1969); *State v. Jones*, 70 Iowa 505, 508, 30 N.W. 750, 751 (1886).

 It is not, however, necessary to prove an injury actually resulted from the assault. Cf. *State v. Gillespie*, 163 N.W.2d at 924; *State v. Bell*, 223 N.W.2d at 184. The gist of the crime is specific intent.

Even so, prior cases suggest that, in order to establish the specific intent required by § 694.7, the State must prove some act which if carried to fruition could result in maiming. Illustratively, this court said in *State v. Akin*, 94 Iowa 50, 52, 62 N.W. 667, 668 (1895): "[T]o constitute the crime of maiming or disfiguring as here defined the accused must have done to another person some one of the acts specified, with intent to maim or disfigure."

Trial court, by instruction 13, defined maiming by use of this pertinent phrase from § 693.1: " * * * cut off or disable a limb or any member of another person * * *." Noticeably, the State does not contend Chatterson tried to cut off a limb or member of the victim's body. This means the prosecution was required to prove defendant intended to disable a limb or member when he committed the alleged assault.

 Such intent is seldom capable of direct proof, but may be shown by reasona-

ble inferences drawn from facts established. E. g., *State v. Bell*, 223 N.W.2d at 184. Also brought into play is the presumption that a person intends the natural consequences of his intentional acts. E. g., *State v. Ochoa*, 244 N.W.2d 773, 777 (Iowa 1976); *State v. Bell, supra*. Therefore, the nature of acts proved did provide a basis upon which the jury could determine whether requisite intent existed.

However, defendant submits the use of his fist or open hand does not support a finding of intent to maim. He attendantly suggests Rose's injuries do not come within the above definition, i. e., no member or limb was disabled.

■ Chatterson's first argument might, arguendo, merit extended discussion if his victim had not been an infant. But as this court said in *State v. Tornquist*, 254 Iowa 1135, 1147, 120 N.W.2d 483, 491 (1963): "Little discernment is required to conclude that the fist, or indeed the hand, of a strong man may readily kill a small * * * child." See also *State v. Bell, supra*. A fortiori, the fist or open hand of an adult could "disable" an infant such as Rose.

Correlatively, "disabled" means "incapacitated by * * * injury, or wounds: crippled." See Webster's Third New International Dictionary, at 642 (1961).

Further in this regard, substantial evidence was adduced which would sustain a finding that Rose suffered assault-related permanent brain injury and like damage to her left side.

■ Although, as aforesaid, the State is not required to prove any injuries resulted from the assault in a prosecution under § 694.7, the extent of Rose's actual injuries is relevant as related to specific intent. *State v. Bell, supra*. Whether the injuries inflicted upon Rose were such as to *disable* a limb or any member of her body was a question for the jury. In like vein it could also resolve the intent element.

Defendant's directed verdict motion was properly overruled.

III. Chatterson further contends prejudicial error was committed when trial court,

in five separate instructions and over defendant's timely objections, improperly described the offense of which Chatterson was accused.

The offense charged was "Assault with Intent to Maim" and the jury was preliminarily so instructed.

Nevertheless, proposed instructions 10, 13, 14, 15 and 17 described the offense as "assault with intent to *commit a felony*". Defendant's objections to the italicized phraseology were overruled. Chatterson additionally objected to verdict form # 1, which described the principal charge as "assault with intent to commit a felony, namely; maiming". In overruling these objections trial court said:

"THE COURT: Instead of namely; maiming I'm going to put namely; to maim.

"MR. PFEFFER: All the way through, your honor?

"THE COURT: Just these two."

When ultimately submitted to the jury, instructions 10 and 14 read "assault with intent to commit a felony", but 13, 15 and 17 and verdict form # 1 said "assault with intent to commit a felony, namely to maim".

■ As trial court subsequently recognized, those instructions were improperly worded. The offense-related phraseology should have been consistent with the information and instruction 1 as suggested by Chatterson: "assault with intent to maim".

On the other hand, defendant's arguments to the effect the questioned wording constituted prejudicial error are without merit. In essence, he finds prejudice in two related ways: (1) the instructions were confusing, and (2) they effectively operated to amend the information and allowed the jury to convict defendant of a crime with which he was not charged.

As to the second premise, we note Chatterson was unquestionably charged under § 694.7, which says: "If any person assault another with intent to maim * * * he shall be imprisoned * * *."

Defendant claims the challenged instructions allowed the jury to convict him of a crime under § 694.5, a wholly different offense than that described in § 694.7. We do not agree.

Section 694.5 says: "If any person assault another with intent to commit any felony or crime punishable by imprisonment in the penitentiary, *where the punishment is not otherwise prescribed*, he shall be imprisoned * * *." (emphasis added).

The purpose of that enactment is not to create a separate offense but rather:

"* * * to provide for the punishment of a person convicted of an assault with intent to commit a definite, specific crime which is made a felony, where no punishment is elsewhere provided by law for the assault." *State v. Austin*, 109 Iowa 118, 121, 80 N.W. 303, 304 (1899).

Admittedly, the questioned instructions are neither within the norm nor by any means models to be followed. However, this alone is not determinative.

As heretofore indicated, we are not presently confronted with a misstatement of law. Similarly, it is to us evident trial court's choice of words was not so confusing as to constitute prejudicial error.

Viewed as a whole, the instructions clearly set out the elements the State had to prove in order to justify a guilty verdict for assault with intent to maim. And use of the precursory phrase "a felony", though redundant, was merely a contemporary characterization of the statutory crime, "assault with intent to maim". Briefly stated, the prefatory broad categorization of the specific crime charged was nothing more than harmless excess verbiage.

Defendant's presently considered assignment affords him no basis for a reversal.

IV. Chatterson correlatively contends he must be sentenced under 694.5, rather than 694.7, which provides a greater maximum penalty. This issue is raised for the first time on appeal. Therefore it is not entertained. *Houston v. State*, 246 N.W.2d 908, 910 (Iowa 1976). Furthermore, Division III hereof negates this contention.

AFFIRMED.