# IN THE COURT OF APPEALS OF IOWA

No. 15-1367
Filed December 21, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GREGORY DANIEL HUDSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Richard G. Blane II, Judge.

A defendant appeals his conviction. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

David C. Solheim, Hancock County Attorney, for amicus curiae Iowa County Attorneys Association.

Heard by Vogel, P.J., and Tabor and Mullins, JJ.; Blane, S.J. takes no part.

**VOGEL, Presiding Judge.**

Gregory Hudson appeals his convictions for one count of willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2015)[1]; three counts of assault, in violation of Iowa Code sections 708.1 and 708.2(6); and interference with official acts, in violation of Iowa Code section 719.1(1)(b). Hudson asserts there was insufficient evidence of his intent as to count I—willful injury causing serious injury—and the district court erred in failing to instruct the jury on self-defense. We conclude there was sufficient evidence for the jury to convict Hudson and he was not entitled to a self-defense instruction. Therefore, we affirm.

I.      Background Facts and Proceedings

On the night of April 30, 2014, Hudson and his fiancé were at Prairie Meadows Racetrack and Casino. At some point, the two engaged in a heated discussion that drew the attention of Prairie Meadows security guards. On that night, a Polk County Sheriff's Deputy was working off-duty security at Prairie Meadows. The deputy noticed the discussion and walked over to see what was going on. After a brief discussion, the situation was resolved. The deputy told Hudson that he could finish the two alcoholic beverages he had but, after those, he was cut off from purchasing further alcoholic beverages. According to the deputy, Hudson was receptive to his intervention and did not indicate any animosity toward the deputy.

---

[1] Based on a numbering change between the 2013 and 2015 Iowa Code, it appears the district court incorrectly used the 2015 Iowa Code rather than the 2013 Iowa Code. The change only affected numbering and had no substantive impact.

A short time later, Hudson and his fiancé left the casino. The deputy and Prairie Meadows security were still monitoring the couple and noticed Hudson had taken the car keys from his fiancé as the couple traversed the parking lot. Concerned Hudson may have been driving out of the lot while impaired by alcohol, security stopped Hudson's car. However, Hudson's fiancé was behind the steering wheel. Hudson became upset, exited the vehicle, and began yelling and pounding on the hood of the car. Hudson then began walking away while still yelling, and several security guards followed him.

As this was occurring, the deputy left the casino and headed to the scene. When the deputy arrived, he observed Hudson making furtive movements with clutched fists, yelling, swearing, and flailing his arms. The deputy positioned himself between Hudson and the security guards and told Hudson to back away, turn around, and lean against a car that was behind him; Hudson refused. With Hudson assuming an aggressive position, the deputy pushed Hudson back. Then the deputy pointed his taser at Hudson and again told him to back away. Hudson refused, pulled up his shirt and said, "If you're going tase me, you might as well do it." According to the deputy, Hudson added, "F**k you. I've been tasered before." The deputy tased Hudson with 50,000 volts. Unfazed by the jolt, Hudson moved forward and struck the deputy in the head. The deputy moved to tase Hudson again, and Hudson punched him again in the head. The deputy fell to the ground. As a result of the punches, the deputy was knocked out and suffered a broken jaw, internal bleeding, and bruising of his kidneys and spleen.

Hudson then began running across the parking lot, while being pursued from a distance by security guards. Hudson reached the street outside Prairie Meadows, where he was met by several law enforcement officers. Hudson then went to the ground on his own. When the officers tried to place handcuffs on Hudson, he squirmed and hid his hands. Several officers attempted to restrain Hudson, but he continued to fight back, including kicking three officers—one in the head—and hyperextending the thumb of a security guard and the hand of an officer. Eventually, the officers tased Hudson again and were able to restrain him and place him under arrest.

On July 21, 2014, the State charged Hudson with seven counts stemming from the incident. During the trial, Hudson requested a justification defense based on self-defense; the district court found a justification instruction was not warranted and refused to give the requested instruction. On May 22, 2015, the jury convicted Hudson of one count of willful injury causing serious injury, three counts of simple assault, and one count of interference with official acts. Hudson appeals.

II.     Standard of Review

"Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We also review issues regarding jury instructions for corrections of errors at law. *State v. Anderson*, 636 N.W.2d 26, 30 (Iowa 2001).

III.    Sufficiency of the Evidence

Hudson claims there was insufficient evidence to show he intended to cause serious injury under Iowa Code section 708.4(1), as opposed to causing

bodily injury under section 708.4(2). Hudson asserts that he struck the deputy with the intent of protecting himself from being tased again, rather than with the intent of causing serious injury. The State counters that was the natural and probable consequence of the blows Hudson struck.

"In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Sanford*, 814 N.W.2d at 615 (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 639–40 (Iowa 2002)). There is sufficient evidence to support the jury's verdict if there was substantial evidence in the record. *Id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

Iowa Code section 708.4 provides "[a]ny person who does an act which is not justified and which is intended to cause serious injury to another commits willful injury."[2] In determining whether a person intended to cause serious injury, a jury is free to consider the attendant facts and circumstances and infer that a person intended the natural results of their actions. *State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004) ("[A]n actor will ordinarily be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act. In addition, as we indicated above, intent may be inferred from the circumstances surrounding the alleged assault."). Further,

---

[2]The act qualifies as a "C" felony if the person causes serious injury. Iowa Code § 708.4(1).

the extent of the victim's injuries may also be used to infer intent. *State v. Bell*, 223 N.W.2d 181, 184 (Iowa 1974).

At trial, the jury heard testimony from multiple witnesses and viewed the video that depicted Hudson striking the deputy in the head with two blows, the second of which knocked the deputy to the ground. Additionally, Hudson did not dispute that he inflicted these blows, only that he did not intend to cause serious injury in so doing. Our review of the testimony and the video indicates that there were two direct blows to the deputy's head, which clearly could have and did result in serious injury. The jury could have reasonably concluded that serious injury was the natural result of Hudson's actions and that he intended that result. *See Taylor*, 689 N.W.2d at 132. Additionally, the jury heard testimony pertaining to the extent of the deputy's injuries, which included a broken jaw, being knocked unconscious, internal bruising to the kidney and spleen, and internal bleeding. Based on the extent of these injuries, the jury could have inferred that Hudson intended to inflict serious injury. *See Bell*, 223 N.W.2d at 184. There was substantial evidence in the record demonstrating both the nature of Hudson's actions and the resulting extent of the deputy's injuries, which would have allowed the jury to reasonably conclude Hudson intended to inflict serious injury; therefore, we conclude there was sufficient evidence in the record to support Hudson's conviction for willful injury.

IV. Jury Instruction

Hudson claims the district court erred in refusing to give his requested justification instruction based on self-defense. Hudson argues he was entitled to

the justification instruction because he claims the deputy used excessive force.[3] The State responds the deputy's use of force was lawful and Hudson was not entitled to a justification instruction.[4]

Initially, we will address the nature of the encounter between the deputy and Hudson. Iowa Code section 804.5 defines an arrest as "the taking of a person into custody when and in the manner authorized by law, including restraint of the person or the person's submission to custody." The deputy did not tell Hudson he was under arrest, and at trial, he testified that he did not consider Hudson to be under arrest. However, at the volatile, late-night scene, the deputy made multiple attempts to gain Hudson's attention and calm him down, including showing his presence, giving a verbal command, and displaying his taser. These actions demonstrate an attempt to simply gain control of a potentially dangerous situation, rather than an attempt to arrest Hudson.

"Under certain circumstances, police may detain persons in the absence of probable cause if the police have reasonable suspicion to believe criminal activity is taking place." *State v. Pals*, 805 N.W.2d 767, 774 (Iowa 2011). Law enforcement "may seize a person on less than probable cause when they suspect the person is about to commit a crime." *Id.* Such a seizure qualifies as "an investigatory stop" and is done "to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning." *State v. Kreps*,

---

[3] This is a slightly different argument than Hudson raised below, where he claimed he was entitled to the instruction because he was not under arrest and the deputy was acting unlawfully.

[4] The State also challenged the timeliness of Hudson's request, which came after the State had presented its case in chief and rested and Hudson had been examined and cross-examined. The district court expressed concern about the timeliness but ultimately entertained the instruction request. Because we conclude the court properly refused to instruct the jury on self-defense, we decline to address the issue of timeliness.

650 N.W.2d 636, 641 (Iowa 2002). An investigatory stop is justified when the officer describes "specific and articulable facts, which taken together with rational inferences from those facts," warrant the intrusion. *Id.* (quoting *State v. Heminover*, 619 N.W.2d 353, 357 (Iowa 2000), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001)).

At trial, the deputy described the observations that caused him to suspect Hudson was about to commit a crime:

> [Hudson] was making furtive movements toward [a security guard] with clutched fists, speaking in a very elevated voice, yelling at him. Prior to that, he was pounding on the hood of his car, flailing his arms, and at that—when I observed that, that's when I ran over there and got in-between both subjects.

The deputy's observations were supported by the security video. He also testified that his goal in approaching the dispute between Hudson and the security guards in the parking lot was to diffuse the situation:

> Well, my main goal there is to prevent any type of injuries to anybody on the property, and with [Hudson's] demeanor and his, I'm going to say, intoxicated state, I was just trying to calm the whole situation down and be a third party and get in there and calm it down.

Weighing the deputy's observations in conjunction with the level of intrusion he sought, we find the deputy's detention of Hudson was justified. The deputy observed Hudson acting erratically and threatening others, and the deputy was exercising a legitimate law enforcement function in attempting to diffuse the volatile scene with a brief intrusion to assess the situation. Accordingly, the deputy was attempting to lawfully detain Hudson for the purposes of a brief investigatory stop.

In *State v. Thomas*, our supreme court held that people were not allowed to use force to resist arrests, even if the arrest was unlawful. 262 N.W.2d 607, 610–611 (Iowa 1978). The Iowa Legislature codified this rule with Iowa Code section 804.12:

> A person is not authorized to use force to resist an arrest, either of the person's self, or another which the person knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if the person believes that the arrest is unlawful or the arrest is in fact unlawful.

In *State v. Bedard*, our supreme court left open the question whether the same rule applied to investigatory stops, that is, whether a person could use force to resist an unlawful detention. 668 N.W.2d 598, 600 (Iowa 2003). Each party requests we resolve this question now.[5] We decline the invitation because we find this case may be resolved under established precedent regarding lawful detentions.

"The right to make an investigatory stop 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *State v. Dewitt*, 811 N.W.2d 460, 468 (Iowa 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Law enforcement may use reasonable physical force to effectuate an investigatory stop. *Id.* In determining whether the use of force is reasonable, we balance the nature of the intrusion with the countervailing government interests, are mindful of the inherent danger surrounding investigatory stops, and require the force used to detain to be limited to what is necessary to ensure the goals of the stop. *Id.* at 468–69. Ultimately,

---

[5] Additionally, an amicus brief was filed by the Iowa County Attorney's Association requesting we address this issue.

proportionality is the touchstone factor in evaluating the reasonableness of force. *Id.* at 469–70.

Our review of the record indicates that the deputy's ultimate use of force was not excessive. Initially, the deputy sought a minimal intrusion to diffuse a situation, which he reasonably believed could escalate to a physical confrontation with the security guards. In response to Hudson's escalated behavior, the deputy carefully increased the nature of his intrusion—from mere presence, to a verbal command, to a push, to the pointing of the taser, and ultimately, to the use of the taser. This cautious escalation indicates the deputy increased the nature of the intrusion proportionally to Hudson's conduct and attempted to use only what force was necessary to accomplish the goal of diffusing the situation. The testimony and the security video indicate that Hudson refused to submit to the deputy's lawful attempt to detain him and the deputy was forced to use the taser. Having determined the deputy acted lawfully in attempting to detain Hudson, we conclude the deputy's use of force did not exceed the level necessary to accomplish the detention.

Because the deputy's detention of Hudson was lawful and the gradual increase in his use of force was not excessive, we conclude Hudson was not entitled to resist the detention by twice striking the deputy in the head. Therefore, on these facts, the district court correctly determined Hudson was not entitled to a justification instruction.

V.     Conclusion

Because we conclude there was sufficient evidence to support Hudson's conviction as to willful injury causing serious injury and because Hudson was not entitled to a justification instruction, we affirm Hudson's convictions.

**AFFIRMED.**