## IN THE COURT OF APPEALS OF IOWA

No. 22-0520
Filed April 26, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ROBBIE JOHN HESS,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

Robbie Hess appeals his conviction for first-degree kidnapping. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau (until withdrawal) and Rachel C. Regenold, Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Heard by Greer, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Robbie Hess appeals his conviction for first-degree kidnapping. He challenges both the weight and the sufficiency of the evidence showing his guilt. He also challenges the trial court's jury instruction on incapacitation. Because the sufficiency and weight of the evidence supports the jury's verdict and Hess failed to preserve error on his claim that the trial court erred in instructing the jury, we affirm.

### I. Background Facts and Proceedings.

A jury found Hess guilty of the first-degree kidnapping of fifteen-year-old B.M. in July 2020. Hess met B.M. while she was staying at a "trap house"[1] after leaving a residential treatment facility in Dubuque. B.M. used various drugs while at the house, including methamphetamine and heroin. As a result, by July 7, she had not slept in at least five days.

On that date, someone at the house got a text message saying the police were coming soon. B.M. became afraid she would be found and returned to the residential treatment facility. So, when Hess offered to let B.M. stay in his home, B.M. agreed and they left the house together.

Rather than taking her to his home, Hess walked B.M. downtown to where his boat was docked on the Mississippi River. They boarded the boat, and Hess took B.M. to a small island on the Wisconsin side of the river.

According to B.M., Hess first brought up sex while they were on the island. B.M. told Hess no, but he "just kept asking." When she didn't comply with what he

---

[1] B.M. testified that a trap house is "a place where people go to do drugs."

wanted, Hess threw her to the ground and removed her clothes.  B.M. did not try to fight Hess off.  She recalls Hess placing a knife next to her on the ground, and she was afraid he would hurt her if she fought.  B.M. did not scream because there was no one else on the island.  Although she "blanked out" for periods, B.M. remembered Hess touching her breasts, touching her "all over," making her touch his penis, and inserting his penis into her vagina.

Hess returned B.M. back to Dubuque and left her on the shore.  He said he forgot his wallet on the island and needed to return to get it.  Hess piloted his boat away.  B.M. waited for Hess, but he did not return.

Steve Cassel saw B.M. walking up the shoreline and talking to herself.  He recognized B.M. from a post he saw about a missing girl.  Even before interacting with her, Cassel thought B.M. had been drinking or was "on something" based on how she walked and talked.  After bringing B.M. to his houseboat, he called the police.

After responding to Cassel's call, police officers brought B.M. to a hospital for medical assistance.  A vaginal swab was collected during a physical exam of B.M.  Male DNA found on the swab was later matched to Hess.

The police eventually identified and located Hess.  When officers first questioned Hess, he did not mention any sexual contact with B.M.  Hess claims he did not disclose it because his girlfriend was present for his questioning and he did not want his girlfriend to know.  He later conceded the sexual contact but contradicted B.M.'s claims.  According to Hess, B.M. wanted to go with him when he went fishing on the island.  While B.M. sat in a chair, Hess fished and "wasn't paying a whole lot of attention to her."  Around midday, he laid down on the ground

and napped. Hess claims that when he awoke from the nap, B.M. made sexual advances and got on top of him while he was still lying on the ground. She removed her shorts and pulled down his swim trunks, which is when they had genital-to-genital contact. He denies that penetration occurred. Hess claimed he was taken aback and did not want to be rude, but he was nervous because they were not sheltered and boats were near the island. He sat up, which pushed B.M. off him. Hess then packed up his fishing gear and returned B.M. to Dubuque before leaving in his boat.

**II. Sufficiency of the Evidence.**

Hess challenges the sufficiency of the evidence supporting his conviction. We review this claim for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). We are bound by the verdict if substantial evidence supports it. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.*

In reviewing the sufficiency of the evidence, we view all the evidence and any inferences drawn from it in the light most favorable to the State. *Id.* Whether the evidence can support a different verdict is irrelevant. *Id.* The question is whether the evidence can support the verdict rendered by the jury. *Id.*

**A. Removal.**

The court instructed the jury that to find Hess guilty of first-degree kidnapping, the State had to prove:

> 1. On or about the 7th day of July, 2020, [Hess] removed [B.M.] from an area on land in the City of Dubuque.
> 2. [Hess] did so with the specific intent to subject [B.M.] to sexual abuse.

3. [Hess] knew he did not have the consent of [B.M.] or other authority to do so.

4. As a result of the removal [B.M.] was sexually abused.

Hess first challenges the proof that he removed B.M. from the City of Dubuque. On removal, the court instructed the jury that "removal requires more than what is included in the commission of the crime of sexual assault." The court further instructed the jury:

No minimum distance of removal is required. It must be more than slight. The removal must have significance apart from the sexual abuse.

In determining whether removal exists, you may consider whether:

1. The risk of harm to [B.M] was substantially increased.
2. The risk of detection was significantly reduced.
3. Escape was made significantly easier.

Hess argues that removing D.M. to the island was merely incidental because it did not substantially increase her risk of harm, lessen the risk of detection, or make his escape significantly easier. He notes the island is visible from multiple vantage points. He also argues the State failed to show he had the specific intent to subject B.M. to sexual abuse when he removed her.

There is substantial evidence supporting the finding that Hess removed B.M. to the island. B.M. testified that she left the trap house with Hess because he offered to let her live at his house. But rather than taking B.M. to his house, Hess isolated her on an unpopulated island. B.M.'s testimony supports a finding that doing so made it easier to commit a sexual assault and significantly reduced the risk of detection. When Hess ignored her statement that she did not want to engage in sexual activity, B.M. testified that she did not fight back because "there

was no point" as no one else was one the island and she was afraid Hess would hurt her.

B.M. also testified that the sexual abuse occurred while she was lying on a sleeping bag that covered the sand on the ground. From her testimony that Hess brought the sleeping bag to the island, the jury could reasonably infer Hess's intent to commit sexual abuse. *See State v. Bell*, 223 N.W.2d 181, 184 (Iowa 1974) (noting that because intent "is seldom capable of direct proof," we must infer it from "all the circumstances attending the assault, together with all relevant facts and circumstances disclosed by the evidence").

Substantial evidence supports the jury's finding that Hess removed B.M.

**B. Territorial Jurisdiction.**

Hess next challenges the evidence showing Iowa has jurisdiction over any crime that occurred. He notes that the island to which he took B.M. is part of the State of Wisconsin and so any sexual activity occurred in Wisconsin.

The trial court instructed the jury on jurisdiction:

> A person is subject to prosecution in Iowa for an offense which the person commits within or outside Iowa, by the person's own conduct, if the offense is committed either wholly or partly within this state.
> If the defendant does a preparatory act in Iowa that contributes more than slightly toward the eventual completion of the offense, Iowa has jurisdiction over the acts of the defendant.
> If you find that [B.M.] was removed pursuant to Instruction Nos. 15, 16, & 17 you may presume that the removal took place in Iowa.

Because the jury found that Hess removed B.M. from an area on land in the City of Dubuque, the jury could presume the removal took place in Iowa. The crime

was therefore committed, at least partly, within Iowa. Thus, substantial evidence supports the jury's finding that Iowa has territorial jurisdiction.

### III. Motion for New Trial.

Hess also challenges the district court's denial of his motion for new trial. He again challenges the evidence, arguing the weight of it does not support his conviction. He also contends the trial court improperly instructed the jury on B.M.'s mental incapacitation.

### A. Weight of the Evidence.

The district court may grant a motion for a new trial "[w]hen the verdict is contrary to law or evidence." Iowa R. Crim. P. 2.24(2)(b)(6). "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016) (citation omitted).

Unlike the sufficiency-of-the-evidence standard, the weight-of-the-evidence standard permits the court to consider the credibility of witnesses. *Id.* But rather than deciding whether sufficient credible evidence supports the jury's verdict, the court may "grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered." *Id.* Because "a motion for new trial brought under the weight-of-the-evidence standard essentially concedes the evidence adequately supports the jury verdict," the court may grant a new trial based on the weight of the evidence "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

In challenging the weight of the evidence supporting his conviction, Hess again disputes the evidence of removal and jurisdiction. He also challenges the weight of the evidence showing B.M.'s incapacity.

**1. Removal.**

Hess revisits his earlier argument on removal, claiming that his act of taking B.M. to the island was merely incidental to the sexual assault and the evidence does not show he had intent to commit sexual abuse before leaving Iowa. But just as we rejected Hess's argument under the sufficiency-of-the-evidence standard, we find the weight of the evidence supports the jury's finding that he removed B.M. from Dubuque. The credible evidence shows that Hess removed B.M. to the island because it significantly reduced the risk of his detection. B.M. had no way to leave the island, and no one else was on it. By taking B.M. to the island, Hess essentially trapped her in a place where no one could intervene in his plan. Hess's "bait and switch" of offering to allow B.M. to stay at his home and instead taking her to the island is evidence of his intent to sexually abuse B.M. The evidence showing Hess brought a sleeping bag with him further supports the jury's finding.

Because the jury's finding that Hess removed B.M. is not against the weight of the evidence, the district court acted within its discretion in denying his motion for new trial.

**2. Jurisdiction.**

Likewise, we reject Hess's claim that the weight of the evidence preponderates against a finding that he committed any part of the crime while in Iowa for the same reason we rejected his claim under the sufficiency-of-the-evidence standard. The finding that Hess removed B.M. allows the presumption

that the removal, and thus part of the crime, occurred in Iowa.  The district court properly denied Hess's motion for new trial on this basis.

### 3. Incapacitation.

Hess contends the jury's finding that he intended to commit sexual abuse based on B.M.'s mental incapacitation is against the weight of the evidence.  He concedes that B.M. testified she was coming off drugs while on the island, but he claims there is no evidence showing she was incapacitated as a result of her drug use.

In denying Hess a new trial, the district court found ample evidence that B.M. was incapacitated because of her intoxication or mental health:

> [T]he court took into consideration the victim's testimony and the observations of her on the officers' body cam video, all of which the jury was able to watch.  She was placed at Hillcrest Family Services for mental health and rehabilitation programming.  She was being treated for auditory and visual hallucinations along with suicidal tendencies.  On the date in question, she reported having used methamphetamine and marijuana, possibly cocaine but she was not sure.  She felt different.  She had consumed alcohol.  She had not slept in five (5) days.  She indicated she was "freaking out" while with the defendant.  She also stated she was blacking out during the events and was "fuzzy."  Furthermore, she indicated she was trying to "get control of herself" for about an hour.  When Steve Cassel found her wandering around on the boat docks, she was talking to herself and screaming.  Watching the video of her after the events, it was reasonable for the jury to conclude she was still under the influence of some substance or suffering from her mental health issues.

Having reviewed the evidence, we concur with the court's assessment. Cassel and the police officers who spoke with B.M. that night after the sexual abuse occurred recognized that B.M. was under the influence of alcohol or drugs. Her behavior, as shown on video exhibits from the police officers' body cameras, shows that B.M. had trouble walking and made strange statements.  Because the

weight of the evidence supports the finding that B.M. was incapacitated, the district court acted within its discretion in denying Hess's motion for new trial.

**B. Jury Instruction.**

Finally, Hess challenges the denial of his motion for new trial based on an erroneous jury instruction. He argues the trial court erred by instructing on the "mentally incapacitated" alternative of third-degree sexual abuse under Iowa Code section 709.4(1)(d) (2020). The instruction at issue states, "'Mentally incapacitated' means that a person is temporarily incapable of controlling the person's own conduct due to the influence of a narcotic, anesthetic, or intoxicating substance." Hess argues the court should have instead instructed the jury on the "under the influence of a controlled substance" alternative under section 709.4(1)(c). That instruction would require proof that (1) a controlled substance prevented B.M. from consenting to a sexual act and (2) Hess knew or reasonably should have known B.M. was under the influence of a controlled substance.

We review his challenge to the jury instruction for correction of errors at law and reverse only if an erroneous instruction prejudice him. *See State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021). We presume an erroneous instruction is prejudicial "unless the record affirmatively establishes there was no prejudice." *Id.* (citation omitted).

The State argues Hess did not preserve error because he did not raise his claim until his motion for new trial. *See State v. Davis*, 951 N.W.2d 8, 16 (Iowa 2020) (noting that challenges to jury instructions must be specific and timely to

preserve error for appellate review). Our rules of procedure require that parties

object to the final jury instructions before final arguments:

> Before jury arguments, the court shall give to each counsel a copy of its instructions in their final form, noting this fact of record and granting reasonable time for counsel to make objections, which shall be made and ruled on before arguments to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. *No other grounds or objections shall be asserted thereafter, or considered on appeal.*

Iowa R. Civ. P. 1.924 (emphasis added); *see also* Iowa R. Crim. P. 2.19(5)(f)

(applying the rules relating to instruction of civil juries to trial of criminal cases);

*State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010) ("Normally, objections to

giving or failing to give jury instructions are waived on direct appeal if not raised

before counsel's closing arguments, and the instructions submitted to the jury

become the law of the case.").[2] By failing to challenge the instruction before the

---

[2] Hess cites *State v. Youngbear*, 202 N.W.2d 70, 72 (Iowa 1972), and *State v. Brown*, 172 N.W.2d 152, 159 (Iowa 1969), for the proposition that a criminal defendant may challenge a jury instruction for the first time in a motion for new trial. Our supreme court "reconcile[d] the divergent views on the subject under our prior cases" in *State v. Rouse*, 290 N.W.2d 911, 914–15 (Iowa 1980), *superseded by statute on other grounds as recognized by Ryan v. Arneson*, 422 N.W.2d 491, 494 (Iowa 1988). After reviewing the cases and statutory evolution that led to the divergence, the court "expressly disapproved" of the view taken in cases like *Youngbear* and *Brown*. *Rouse*, 290 N.W.2d at 915.

> Nothing in our new-trial rule suggests that, merely because misdirection of the jury and refusal to grant requested instructions are grounds for a new trial, these issues need not be preserved at the appropriate time during the trial. In fact, this view of the effect of the new-trial rule is not reasonable. For example, another ground . . . is that the court erred in the decision of any question of law during the course of the trial. If enumeration as a ground for new trial obviates the need for timely objection at trial, then virtually every objection to the court's rulings throughout the trial could be saved for the new trial motion because they would be decisions of questions of law during the course of the trial. We do not believe that such

trial court submitted the case to the jury, Hess did not preserve his challenge to the jury instruction for appellate review. But even disregarding error-preservation concerns, we cannot find the prejudice required to merit reversal based on the evidence of B.M's incapacitation cited above.

**IV. Conclusion.**

Because the sufficiency and weight of the evidence supports the jury's verdict and Hess failed to preserve error on his challenge to the jury instruction, we affirm.

**AFFIRMED.**

---

results were intended in the drafting of our present rules or their predecessors.

*Id.* (cleaned up).