**Tracey HILDRETH, Appellant,**

v.

**IOWA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 94–2034.

Supreme Court of Iowa.

June 19, 1996.

Rehearing Denied July 26, 1996.

Robert A. Wright, Jr. of Wright & Wright, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General, and Mary K. Wickman, Assistant Attorney General, for appellee.

CARTER, Justice.

The issue on this appeal is whether the Iowa Department of Human Services (the agency) correctly determined that petitioner, Tracey Hildreth, was guilty of child abuse as a result of spanking his eight-year-old daughter with a wooden spoon. The evidentiary facts are not disputed, but there is a dispute as to whether the facts support a finding of child abuse under the controlling statutes and administrative regulations. Petitioner also asserts that the agency's action, if approved, infringes upon his right to exercise his religious beliefs in violation of the First Amendment to the federal constitution. The district court upheld the agency's decision. We reverse.

The critical facts as summarized by both the administrative law judge and the district court are as follows. Amanda, the petitioner's daughter, was eight years old at the time of the incident in question. The appellant is a noncustodial parent who was exercising visitation on February 8, 1993. He called Amanda earlier in the day and told her to take a bath and wash her hair in preparation for photographs to be taken at a church function that evening. He informed her that he wished that she and her sister would be well groomed for the occasion. When he arrived at his former wife's residence, where Amanda resided, he found that Amanda had not bathed nor washed her hair. He advised her that she would be disciplined for disobeying his directions.

Petitioner and Amanda then proceeded to his residence. Once there he proceeded to

strike Amanda three times on the buttocks with a wooden spoon. She was wearing denim jeans at the time. The evidence indicated that petitioner discussed the reasons for the punishment with his daughter before administering it. Two oval marks red in color were observed by the child's mother a few hours after the spanking and by the school nurse on the following morning.[1] The mother testified that the marks could be discerned six days after the spanking. A child abuse investigator who viewed Amanda five days after the spanking testified that she could only observe one faint red mark at that time.

The administrative law judge made a finding of fact that petitioner did not intend to inflict an injury on his daughter. She viewed the proper standard as being whether a reasonable person would believe that an injury would be produced from the action taken. Relying primarily on petitioner's statement that he did intend to inflict some pain in administering the spanking, the administrative law judge concluded that he should have known the force of the blow might cause the condition that resulted. For reasons that we will presently discuss, she determined that this condition, *i.e.*, a reddening of the skin, was evidence of a physical injury.

■ The statutory definition of child abuse is as follows:

Any nonaccidental physical injury, or injury which is at variance with the history given of it, suffered by a child as the result of the acts or omissions of a person responsible for the care of the child.

Iowa Code § 232.68(2)(a) (1993). The agency has adopted the following administrative rule defining physical injury:

[D]amage to any bodily tissue to the extent that the tissue must undergo a healing process in order to be restored to a sound and healthy condition or damage to any bodily tissue to the extent that the tissue cannot be restored to a sound and healthy condition or damage to any bodily tissue which results in the death of the person who has sustained the damage.

Iowa Admin.Code r. 441–175.1.

The agency has issued a child protective services investigation handbook for its field workers, which states that physical injuries that require a healing process include, but are not limited to, abrasions, lacerations (including documented bleeding), bruises, hyperemia (reddening of surface tissue) lasting twenty-four hours or more, burns, scalds, sprains, and welts. Hyperemia is defined in the handbook as a reddening of surface tissue.[2] It is stated in the handbook that hyperemia is the only type of injury for which a twenty-four-hour duration is required.

In her finding on the "physical injury" element of section 232.68(2)(a), the administrative law judge stated:

Although there is no law which prohibits the use of physical discipline (i.e., spanking), when such discipline results in an injury (i.e., red marks which last longer than 24 hours), the discipline is categorized as abusive. The red marks on the child's buttocks lasted in excess of 24 hours. Red marks lasting five days clearly require a healing process before dissipating. Such marks imposed in the course of discipline are abusive.

■ This court has frequently recognized that parents do have a right to inflict reasonable corporal punishment in rearing their children. *See In re W.G.*, 349 N.W.2d 487, 487–88 (Iowa 1984); *State v. Bell*, 223 N.W.2d 181, 184 (Iowa 1974); *State v. Fisch-*

---

1. Although the agency's initial abuse report states that the mother indicated these marks were of purple coloration, the mother did not so testify at the contested case hearing. Other than this reference, all other indications throughout the administrative proceeding, including the mother's hearing testimony, were that the marks were of a reddish color. Both the decision of the administrative law judge and the decision of the district court refer to the marks as being a reddish color at all times. The State so describes the marks in its brief on this appeal.

2. A standard medical dictionary defines "hyperemia" as "the presence of an increased amount of blood in a part or organ." THOMAS L. STEDMAN'S MEDICAL DICTIONARY 739 (25th ed. 1990). This same definition indicates that hyperemia may be either arterial, which is described as active hyperemia, or venous, which is described as passive hyperemia. *Id.*

er, 245 Iowa 170, 176–78, 60 N.W.2d 105, 108–09 (1953); *State v. Bitman,* 13 Iowa 485, 486 (1862). The district court recognized that the agency's action creates considerable tension with this policy by placing at risk any parent who administers corporal punishment that leaves marks on the skin. It suggested in its decision that many citizens would characterize petitioner's action in the present case as reasonable parental discipline. It concluded, however, that the statute burdens corporal punishment only to the extent of requiring parents to take care not to physically injure the child. The controlling principle was, in the district court's view, that it is within the power of the State to include within the definition of child abuse any non-accidental physical injury resulting from corporal punishment.

Agency rules are ordinarily given the force and effect of law. *Fernandez v. Iowa Dep't of Human Servs.,* 375 N.W.2d 701, 707 (Iowa 1985); *Anderson v. Iowa Dep't of Human Servs.,* 368 N.W.2d 104, 108 (Iowa 1985). The definition of physical injury contained in Iowa Administrative Code rule 441–175.1 is expressed in terms of a necessary healing process of bodily tissue so as to be restored to a sound and healthy condition. Implicit in the definition of "physical injury" is a requirement that an external force has initially placed the bodily tissue in an unsound or unhealthy condition. Consequently, we cannot accept the conclusion in the agency handbook that any reddening of the skin lasting for twenty-four hours is a physical injury per se. We believe, rather, that welts, bruises, or similar markings are not physical injuries per se but may be and frequently are evidence from which the existence of a physical injury can be found.

We need not determine in the present case whether the red marks on Amanda's skin reveal the unsound or unhealthy condition that is required for a finding of physical injury. The definition of "nonaccidental physical injury" is, by agency rule, as follows:

An injury which was a natural and probable result of a caretaker's actions which the caretaker could have reasonably foreseen, or which a reasonable person could have foreseen in similar circumstances, or which resulted from an act administered for the specific purpose of causing an injury.

Iowa Admin.Code r. 441–175.1. In applying this rule to petitioner's actions, we are convinced that the agency should have concluded that he could not reasonably have foreseen that the rather limited striking of Amanda's buttocks would produce a physical injury. The marginal nature of the alleged injury weighs heavily in that conclusion. The laws of physics are such that when even a moderate degree of force is administered through an instrument that makes contact with only a small area of the body, the pressure visited upon that point may be more than will reasonably be anticipated. We are convinced that this is what occurred in the present case. Because we conclude that the agency's finding of nonaccidental physical injury was contrary to law, the judgment of the district court and the decision of the agency are reversed. This disposition makes it unnecessary to consider petitioner's contentions based on the free exercise of his religion.

**REVERSED.**

All justices concur except HARRIS, NEUMAN, and ANDREASEN, JJ., who dissent.

HARRIS, Justice (dissenting).

It seems almost ironic that the majority allows Hildreth to escape being found a child abuser because "he could not reasonably have foreseen that the rather limited striking of Amanda's buttocks would produce physical injury." It seems to me that he was bent on inflicting such an injury. His actions were painstakingly deliberate. People are commonly presumed to intend the natural consequences of their acts, and it strikes me as preposterous to pretend Hildreth did not expect a physical injury to result from striking the child so hard with a wooden spoon as to leave her marked for days.

Hildreth succeeded in his efforts. In *State v. Arnold,* 543 N.W.2d 600 (Iowa 1996), we affirmed a conviction of child endangerment in violation of Iowa Code sections 726.6(1) and 726.6(3) (1993), holding the evidence sup-

ported findings that Arnold, in disciplining his daughter

a. Knowingly acted in a manner creating a substantial risk to [the child's] physical, mental or emotional health or safety, or

b. Intentionally used unreasonable force, torture or cruelty that resulted in physical injury to [the child].

Amanda's bruise admittedly is not as severe as the three or perhaps four involved in *Arnold*. But I think the administrative rule, quoted by the majority, is an eminently reasonable definition of physical injury. Hildreth easily qualifies as an abuser under that definition.

I would affirm.

NEUMAN and ANDREASEN, JJ., join this dissent.