**In the INTEREST OF B.B., K.B., T.B., and J.B., Minor Children,**

**J.B., Mother of K.B. and T.B., Appellant,**

**J.B., Father, Appellant.**

**No. 98–1308.**

Court of Appeals of Iowa.

April 30, 1999.

---

Richard K. Betterton of Snow, Knock, Sevcik & Betterton, Cedar Falls, for appellant father.

R. Allen Corzine of Pieters, Pieters & Corzine, Waterloo, for appellant mother.

Kellyann M. Lekar of Roberts and Stevens, P.L.C., Waterloo, guardian ad litem for minor children.

Thomas J. Miller, Attorney General, Chris Odell, Assistant Attorney General, and Steve Halbach, Assistant County Attorney, for appellee State.

Diane Ruisch Larsen, Waterloo, for K.T., mother of B.B. and J.B.

Heard by SACKETT, C.J., VOGEL, J., and SCHLEGEL,* S.J.

VOGEL, J.

Jay B. and Janice B. appeal the juvenile court order adjudicating their children in need of assistance. We affirm.

***Background facts.*** Jay B. is the father of four children: Brandon, born in September of 1983, and Jason, born in June of 1985, are the product of his first marriage to Katherine T.; Keshia, born in September of 1988, and TeShea, born in January

---

* Senior judge assigned by order pursuant to Iowa Code § 602.9206 (1997).

of 1995, are the product of his current marriage to wife Janice.

The Department of Human Services (DHS) first encountered the family in October of 1988, when a report of physical abuse was alleged with Jay as the perpetrator and Brandon, then aged five, and Jason, then aged three, as the victims. The investigative report stated that Jay had admitted to spanking the children with a belt on occasion and had last done so about a week before. The investigator observed no marks on Jason, but found that Brandon had a dark-colored, linear bruise which was approximately two inches long and one-quarter to one-half inches wide. Due to this mark and Jay's admission, this investigation resulted in a founded report of abuse by Jay of Brandon.

In June of 1989, DHS investigated a second report of abuse. The investigator observed three linear marks on Brandon's upper left thigh. Again, Jay admitted that he had spanked Brandon with a belt. This investigation resulted in a second founded report of abuse by Jay of Brandon. Jay requested services and the social worker recommended family therapy; however, the record does not indicate that services were commenced.

In February of 1996, DHS investigated a third report of abuse. Brandon, Jason, and Keshia, then aged twelve, ten and seven, respectively, all told the investigator that they had been whipped in the past and were whipped the night before for not cleaning their rooms. Jay confirmed that Brandon and Jason were whipped with a belt and an extension cord and that Keshia was whipped with the belt only. The investigator observed several marks and bruising on Brandon's buttocks including four "lacerations"[1] between one and four inches long. The investigator also observed light green bruises on Jason's buttocks which appeared to be several days old. Keshia did not want to let the investigator examine her. This incident resulted in a founded report of abuse of Brandon and Jason by Jay. Jay and Janice agreed to participate in services and began attending family therapy and parent skills services.

Finally, in March of 1997, DHS investigated an allegation of abuse of Brandon. The investigator confirmed that Brandon had bruises on his buttocks from being whipped with an extension cord by Jay. Based on the family's past history and lack of success with services, the investigator recommended that a petition be filed in juvenile court.

On April 28, 1997, a CINA petition was filed alleging that Brandon, Jason, Keshia, and TeShea were children in need of assistance pursuant to Iowa Code sections 232.2(6)(b)(2) & (c)(2). Jay and Janice were ordered to continue participating in family therapy and skill development services. In October of 1997, Brandon was granted leave to move to his mother's home in New Jersey following a confrontation with his father, in which Brandon claimed Jay struck him several times in the face and broke his lip open.[2] In March of 1998, DHS reported to the court that although Jay and Janice were meeting with service providers, they were being evasive and had made very little progress. An adjudicatory hearing was subsequently held, and the juvenile court determined the children to be children in need of assistance pursuant to Iowa Code section 232.2(6)(b)(2). Jay and Janice now appeal.[3]

---

1. At trial, the investigator explained that the lacerations were not "a deep cut like a laceration in that sense, but it was a laceration that had already started the healing process with scabs forming."

2. This incident was investigated, but was determined to be unsubstantiated because of Brandon's desire to move to his mother's home and his potential motive to lie.

3. Katherine did not contest the adjudication and is not a participant in this appeal. At the time of the hearing, Brandon was living with Katherine through Jay's voluntary agreement, but remained under the juvenile court's jurisdiction. Jay was also arranging to have Jason

 *Scope of review.* Our review of an action arising from CINA proceedings is de novo. *In re D.S.*, 563 N.W.2d 12, 14 (Iowa App.1997); Iowa R.App.P. 4. We give weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses, but we are not bound by these findings. *D.S.*, 563 N.W.2d at 14; Iowa R.App.P. 14(f)(7). The State shall have the burden of proving the allegations by clear and convincing evidence. Iowa Code § 232.96(2) (1995).

*I. Constitutional claims.* Jay and Janice contend that the adjudication of their children as children in need of assistance unconstitutionally infringes on their right to free exercise of their religious beliefs in corporal punishment. Although their religious beliefs were thoroughly discussed during the adjudicatory hearing, Jay and Janice did not specifically raise a constitutional argument at trial and the trial court did not address any constitutional issues in its ruling. Jay and Janice also did not raise a constitutional argument in their 179(b) motions, nor was any addressed in the ruling. Therefore, the issue was not preserved for our review and we will not address it in this appeal. *See In re A.M.H.*, 516 N.W.2d 867, 872 (Iowa 1994); *State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206–07 (Iowa 1984); *In re N.W.E.*, 564 N.W.2d 451, 455–56 (Iowa App.1997).

*II. Clear and convincing evidence.* Jay and Janice next contend that the juvenile court erred in finding clear and convincing evidence to support the adjudication.

Iowa Code section 232.2(6)(b) (1995) defines a child in need of assistance as an unmarried child "[w]hose parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." Physical abuse or neglect is defined as "any nonaccidental physical injury suffered by a child as a result of the acts or omissions of the child's parent, guardian, or custodian, or other person legally responsible for the child." Iowa Code § 232.2(42) (1995). Physical injury is defined in the Iowa Administrative Code as:

> [D]amage to any bodily tissue to the extent that the tissue must undergo a healing process in order to be restored to a sound and healthy condition or damage to any bodily tissue to the extent that the tissue cannot be restored to a sound and healthy condition or damage to any bodily tissue which results in the death of the person who has sustained the damage.

Iowa Admin.Code r. 441–175.1.

Jay and Janice deny that the children have suffered physical injuries in the past, as defined by the Iowa Administrative Code, and assert that the children are not in danger of being abused in the future. They also deny that their family has any problems, which has prevented the service providers from exploring alternative methods of discipline. It is clear that Jay and Janice fully intend to continue utilizing the same methods of harsh corporal punishment to discipline their children.

 Our statutory and case law do provide that parents have a right to inflict reasonable corporal punishment in rearing their children. *See Hildreth v. Iowa Dept. of Human Services*, 550 N.W.2d 157, 159 (Iowa 1996); *In re W.G.*, 349 N.W.2d 487, 487–88 (Iowa 1984). However, a parent must not "punish with undue severity or cruelty, or only because he is angered with the child and thereby gratifies his own aroused passions." *State v. Fischer*, 245 Iowa 170, 177, 60 N.W.2d 105, 109 (1953). In determining whether the punishment crosses the line from corrective to abusive, the court looks at the amount of force used while taking into account the child's age,

move in with Katherine. The juvenile court granted concurrent jurisdiction to allow custody to be litigated in district court.

physical condition, and other characteristics as well as with the gravity of the child's misconduct. *See State v. Arnold,* 543 N.W.2d 600, 603 (Iowa 1996) (citations omitted).

■ On our de novo review, we conclude that there was clear and convincing evidence that Brandon and Jason had been physically abused and that the remaining children in the home are imminently likely to be physically abused. This case differs from *Hildreth,* where the Iowa Supreme Court found that the father could not have reasonably foreseen that the use of a wooden spoon would have physically injured his child. *See Hildreth,* 550 N.W.2d at 160. Unlike the father in *Hildreth,* Jay and Janice have been repeatedly warned of the possible physical consequences of using belts, cords, and boards in disciplining their children. When physical injury results in this family, we must assume that they intended the natural consequences of their acts. *See Id.* (Harris, J., dissenting). At the adjudicatory hearing, Jay and Janice defended their use of an instrument, as opposed to use of their hand, arguing that a hand wasn't as effective. Jay explained:

> [I]f I'm hitting them with my hand, you know, it can make them think that that's the way to solve things is by hitting with the hand. Whereas, punishment by using that—the belt also puts structure to it.

Jay and Janice fully intend to continue using a board, a belt or an extension cord to discipline their children when necessary, despite the fact that Brandon and Jason have suffered repeated bruises, marks or lacerations as a result. Furthermore, when looking at the amount of force used compared to the gravity of the children's misconduct,[4] there is a question as to whether Jay, in particular, physically punishes the children for purely corrective reasons. Jay admitted that the children were regularly and routinely physically punished for fairly minor infractions, such as being disrespectful, talking back, and not cleaning the house to his satisfaction. The children told investigators that physical punishment was used more often than other methods, and Brandon told an investigator that he thought Jay took out his work stress on them. There are also strong indications in this record that striking these children has taught them that aggressive behavior is acceptable. Both Brandon and Jason have apparently adopted Jay's physically aggressive method of problem-solving as evidenced by their fighting and aggressive behavior at school. While the State is not going to step in to stop parents from using corporal punishment on their children, the evidence strongly supports that Jay crossed the line from corrective to abusive action. He repeatedly used excessive force which both exceeded the limits of moderation or reasonableness as outlined in prior case law and occasionally inflicted physical injury on his children. *See Arnold,* 543 N.W.2d at 603.

We find clear and convincing evidence to support that the children were children in need of assistance under Iowa Code section 232.2(6)(b). We therefore affirm the juvenile court's ruling.

**AFFIRMED.**

SCHLEGEL, S.J., concurs; SACKETT, C.J., specially concurs.

SACKETT, C.J., concurring specially. .

I concur specially. The question is whether children should be found to be children in need of assistance where (1) their parents believe spanking is an effective form of discipline, and (2) the force the parents use in imposing the discipline has resulted in the children suffering minor bruises and abrasions.

These parents have spanked their children with a buckleless belt, extension cord, and table tennis paddle. The parents insist the State's action is in violation of

---

4. *See Arnold,* 543 N.W.2d at 603.

their religious rights to discipline their children, and the State's action infringes on their right to the free exercise of their religious beliefs. The majority does not address the constitutional issue finding it was not preserved for review. I believe the issue was preserved, but I reject the parent's claim religious freedom should allow them to abuse children.

However, the question remains whether the parents' choice of discipline is child abuse such as justifies the State's intervention. This leads to the sometimes easy, though often difficult, question: "What is child abuse, and when does the legislature direct the State should penetrate the family unit and substitute its judgment and values as to the care of children for those of the children's parents?"

History tells us State intervention into the function of families is of fairly recent origin. Such intervention is clearly justified where parents treat their children in dangerous and clearly unacceptable manners.

The parents here love their children and have provided them structure, food, clothing, discipline, and love. We are involved with this family *only* because the State of Iowa is contending the parents do not properly discipline their children.

I have lived long enough to know from personal experience that not many years ago in this state children were disciplined in homes and at school by spanking them with rulers, sticks, and belts, and this type of discipline was not looked upon as child abuse. Rather, it was considered an acceptable form of discipline.

It is not the purpose of this special concurrence to debate the issue of how children should be disciplined. There are probably as many theories of discipline as there are parents. I personally do not believe spanking children to be acceptable discipline, yet it is not necessarily my place to impose my values on others. Rather, it is my job to reasonably assess whether what happened here is serious enough to demand State intervention.

It would be hoped a child would never suffer even a bruise or a scrape. Yet, even children in homes where parents never yield a stick or a hand suffer bruises and scrapes and sometimes more serious injuries. The injuries come from play and acceptable sporting events, such as football, boxing, and soccer where physical contact with another that produces pain is a part of the sport itself. Consequently, had these children received the bruises and lacerations in a football game or a boxing meet, or been clobbered by a hockey stick, we would look at the injuries as normal incidents of childhood and allow an otherwise functioning family to go about their own business without State intervention.

There is strong support for the fact children are well-served in an intact and strong family unit. I believe even when State intervention is undoubtedly needed and brings necessary relief to a troubled family, it comes at a considerable cost to the family unit and can undermine the relationship between parent and child. The State of Iowa, despite the efforts of a number of conscientious people, is a poor parent and my years on this court have only strengthened this belief.

Each child, each family, and each situation is different, and parents and children react differently. Furthermore, no parent offers the perfect home. In our less than perfect world, all parents inflict injury, whether physical or emotional, on their children.

These parents' actions have rendered hurt. If placed on a scale of one to ten, with a light slap being one and murder or bombing the enemy being ten, their actions probably ranked a two. Whether these children grow up to hate their parents for the discipline or thank them for it is something this court is completely without the ability to judge.

This issue is not easy to resolve. I commend the majority of the Supreme Court who, in *Hildreth v. Iowa Dep't of Human Servs.*, 550 N.W.2d 157 (Iowa 1996), approached the matter from a rational and reasonable basis.

Life is not perfect, despite attitudes that with enough government regulation we will make it so. There are a large number of children in this state who face extremely bleak and distressing circumstances and do not enjoy the love and attention these children receive from their family. While I disagree with some of the majority's conclusions and findings, I concur because I find they have correctly applied *Hildreth*.

I specifically depart from the majority's conclusion that because a young boy fights at school he is acting out because he was spanked at home. This is not a conclusion to reach without any statistical evidence. Nor do I believe that only young boys who come from homes where they are disciplined by spanking fight at school. Experience has shown me even young men who are not spanked at home fight at school.