# IN THE COURT OF APPEALS OF IOWA

No. 17-0338
Filed May 3, 2017

**IN THE INTEREST OF A.W.,**
**Minor Child,**

**L.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals from a dispositional order entered pursuant to Iowa Code chapter 232 (2017). **AFFIRMED.**

Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

A mother appeals from a dispositional order entered pursuant to Iowa Code chapter 232 (2017) challenging the juvenile court's finding that aggravated circumstances exist to waive the requirement for making reasonable efforts. Because we agree with the juvenile court's determination, we affirm.

### I. Background Facts and Proceedings.

L.C. is the biological mother of six children, including A.W., born in September 2016.[1]  The mother's parental rights to her five older children were terminated before A.W.'s birth.  Her oldest child B.W. was removed from her care in 2008 after her "home was raided by law enforcement due to several individuals, who were living in the residence, using various illegal drugs to the extent that [B.W., then an infant], tested positive for amphetamines, cocaine, alcohol and other substances."  Following almost a year of reunification services, the mother's parental rights to B.W. were terminated.

The mother gave birth to her second child a few months after the termination of her parental rights to B.W. in 2009.  Her third, fourth, and fifth children were born in 2010, 2013, and 2014, respectively.  From May 2009 to July 2014, the mother, with her children in tow, "roamed from place to place, living with multiple people who used / sold illegal drugs."

The family came to the attention of the Iowa Department of Human Services (Department) in June 2015, after it was alleged the children were at risk because the mother was not adequately supervising the children.  The Department's responding protective-services worker and a law enforcement

---

[1] The father is not a party to this appeal.

official, who was responding to an unrelated complaint, went to the house where the mother and children lived. The condition of the home was deplorable:

> Police found . . . [t]here had been no electricity or running water for over a month; the children were observed to be filthy; there were four adults living in the home with no food "whatsoever" in the house with "tons of beer cans on the front porch" . . . ; a baby bottle that was "absolutely filthy," "absolutely disgusting" with grime around the white part and something red on the nipple; and the children had access to dangerous clutter or food lying on the floor, including a cigarette that [the six-year-old child] had picked up and lit with a lighter found nearby. Further, an intoxicated adult male allegedly asked the mother, in front of the [Department's worker], "to go upstairs and have sex with him."

The children were removed from her care at that time.

Services were again offered to the mother for reunification but the mother's participation was minimal. Despite being offered numerous chances to engage in reunification services and meet the expectations explicitly laid out for her, the mother's participation was inconsistent. Among other things, the mother was discharged from her substance-abuse treatment program due to her lack of attendance and compliance. Ultimately, the juvenile court in March 2016 terminated her parental rights to the four children. The court found that although reunification services had been offered or provided to the mother, she and the children's father

> have been unable or unwilling to stabilize their lifestyles. The circumstances leading to the adjudication of the children continue to exist. Neither [parent] has taken any affirmative action to assume their role as the children's parents. They have met no financial obligations and have made no reasonable effort to complete responsibilities of the case permanency plan.
> Supervised visits were provided, with parent skill development and resource referrals offered at the time of visits. Neither [parent was] consistent in attending visits, which caused significant emotional turmoil for the children and resulted in

weakened parent-child relationships. [The parents] have done nothing to maintain a place of importance in the children's lives.

Neither [parent] has demonstrated they are capable of providing for their children. There is no evidence that either [parent] has fully addressed their respective addictions and maintained sobriety. Neither [parent] has obtained / maintained stable employment in order to provide for the basic needs of their children. Neither [parent] has addressed their mental health issues. Neither [parent] has obtained / maintained stable housing. They have continually moved from relatives to friends to motels to shelters, often times not knowing the names of the individuals they are staying with. These children were removed from a deplorable living environment, with no food, running water, or electricity. The children have been exposed to and left under the care of numerous strangers, most of whom are drug users / dealers, and exposed to ongoing drug usage.

The circumstances which led to the removal, adjudication, and termination of parental rights concerning their [oldest child, B.W.], are eerily similar to the circumstances which resulted in the removal and adjudication of these four children. Nothing has changed over the past decade. [The parents] have been unable to identify, much less address, the concerns raised in order to provide for and protect their children.

[The parents] were granted an additional period of time . . . to work toward reunification. They made little to no progress to that end. Neither [parent] requested additional services to assist with reunification. There are no further services which can be provided that will correct the circumstances which led to the adjudication of their children. [The parents] continue to lack the ability or willingness to respond to services and an additional period of rehabilitation would not correct the situation. . . .

The children have . . . [not] been returned to the custody of either parent [since their removal], and no trial home placement has taken place . . . . The children could not be returned to the custody of either parent due to [the parents'] ongoing unstable lifestyle, lack of stable housing, lack of financial resources, unhealthy relationships, and parenting deficiencies at the present time without suffering further harmful effects, nor could they be returned at any time in the foreseeable future.

A.W. tested positive for methamphetamine at birth, and the child was removed from the mother's care.[2]  After the removal, the child's hair was tested and was positive for methamphetamine.  The child was subsequently adjudicated a child in need of assistance, and the State requested provision of reasonable efforts to the parents be waived and a hearing set on the matter.  The court ordered that the waiver-of-reasonable-efforts request be heard at the disposition hearing.

The dispositional/aggravated-circumstances hearing was held in February 2017.  There, the mother testified she still received Social Security disability benefits for an intellectual disability.  She confirmed this was still her only income, but she testified a lot had changed since the February 2016 termination-of-parental-rights hearing, explaining she was "more depressed now, stressed out, having problems doing anything.  But [she was] trying [her] best and hardest to get it done."  She missed scheduled visits with the child.  She admitted that she understood she was to obtain a substance-abuse evaluation, and she had "been trying to get around to do it," but she had not done so.

Following the mother's testimony, the child's guardian ad litem (GAL) requested reasonable efforts be waived due to aggravated circumstances.  The GAL likened the mother's repeated actions—or lack thereof—to a Groundhog Day[3] time-loop scenario, reflecting:

---

[2] The mother and child were actually released from the hospital before the test results were obtained, and despite the Department's tenacious efforts, they were not found until December 2016.  The child was then formally removed from the mother's care.

[3] Groundhog Day is a fantasy-comedy film wherein the main character, a weatherman covering the annual Groundhog Day event in Punxsutawney, Pennsylvania, "finds himself inexplicably living the same day over and over again."  Groundhog Day

> We're back in court like we were a year ago. The parties are at the same position where they are regarding housing, regarding treatment, and they come in on the eve of this hearing and say, "Give us another chance; we need another chance." And my position, Your Honor, is that [A.W.] needs a chance . . . to not be a part of this chaotic lifestyle."

The court agreed, finding the service providers and caseworkers had gone above and beyond to try to get the mother involved in the case, but, "for whatever reason, [the mother was] unable to take advantage of the things that people have been trying to give [her] for years." The court stressed it had tried to give the mother explicit, concrete expectations, but the mother did not attempt to meet them. The court found aggravated circumstances existed pursuant to Iowa Code section 232.102(12)(a), finding the mother abandoned the child. The court also found aggravated circumstances existed under section 232.102(12)(c), finding the mother's parental rights to her other children had been terminated "and there is clear and convincing evidence to show that the offer or receipt of services would not likely, within a reasonable period of time, correct the conditions which led to the child's removal." The court directed the State to file a petition for termination of parental rights.

### II. Discussion.

The mother now appeals the juvenile court's ruling that aggravated circumstances exist under paragraphs (a) and (c). We need only determine whether the court's finding that aggravated circumstances exist under one of the paragraphs was proper. *See* Iowa Code § 232.102(12) (stating the "existence of aggravated circumstances is indicated by any of" the paragraphs that followed).

---

(Columbia Pictures 1993); *Groundhog Day*, IMDB, http://www.imdb.com/title/tt0107048 (last visited Apr. 19, 2017).

Our review is de novo. *See* Iowa R. App. P. 6.907; *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014); *In re B.B.*, 598 N.W.2d 312, 315 (Iowa Ct. App. 1999).

The parent-child relationship is constitutionally protected. *See Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972); *State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 615 (Iowa 2013); *In re K.L.C.*, 372 N.W.2d 223, 226 (Iowa 1985). Additionally, "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Notwithstanding:

> The protection of children is one of the most well-established duties and public policies of the State of Iowa. The State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it. Both [the Department] and the juvenile court have the important function of protecting children who are in need of assistance.

*In re A.M.*, 856 N.W.2d 365, 376 (Iowa 2014) (alterations, internal citations, and quotation marks omitted).

In light of these competing interests, the legislature has directed chapter 232 be "liberally construed to the end that each child under the jurisdiction of the court . . . receive, *preferably* in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state." Iowa Code § 232.1 (emphasis added); *see also A.M.*, 856 N.W.2d at 373. Thus, "[w]e afford a rebuttable presumption that the best interest of a child is served when custody is with the natural parents," *In re N.M.*, 491 N.W.2d 153, 156 (Iowa 1992), and "[w]henever possible the court should permit the child to remain at home," Iowa Code § 232.102(5)(a). But it is the juvenile court's duty to intervene and remove children from the care and custody of parents, either temporarily or

permanently, when necessary. *See A.M.*, 856 N.W.2d at 376. If children are removed from their home, DHS must "make every reasonable effort" to return them to their home as quickly as possible consistent with their best interests. Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). However, the reasonable efforts requirement may be waived in limited specific situations. *See id.* §§ 232.102(12), .111(2)(a)(2).

Upon our de novo review, we agree with the juvenile court that aggravating circumstances exist under 232.102(12)(c) to waive the reasonable efforts requirement. We do not doubt the mother loves A.W., and we recognize the mother's intellectual disability has steepened her learning curve. Nevertheless, the record overwhelmingly shows the mother has not been able to safely care for her children—and at times herself—over the years, and there is nothing in the record to suggest anything has changed. We do not find, as the mother's appellate counsel zealously advocates, that the mother "made some progress toward reunification, and . . . she is poised to make significant additional progress in the near future." Conversely, the record shows the mother, time and time again, has either been unable or unwilling to put the needs of her children first and address her numerous issues. She has been offered a plethora of services over the years and has had ample time to address the valid safety concerns of the juvenile court, but she has not done so. Instead, she points to her care of A.W. for the first three months of the child's life as evidence she could safely parent the child such that the child could be returned to her care, but the mother overlooks the facts that the child tested positive for methamphetamine at birth and again at the end of those three months in the mother's care. This is

basically the same scenario that occurred in her eldest child's case in 2008. The facts of this case along with the mother's history evidence that the conditions which led to the child's removal are not likely to be corrected within a reasonable period of time by the offer or receipt of services.

### III. Conclusion.

Because we agree with the juvenile court's determination that aggravated circumstances exist to waive the requirement for making reasonable efforts, we affirm the juvenile court's dispositional order.

**AFFIRMED.**