# IN THE COURT OF APPEALS OF IOWA

No. 18-0869
Filed August 1, 2018

**IN THE INTEREST OF J.R.,**
**Minor Child,**

**W.R., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.


        A father appeals the adjudication of his child as a child in need of assistance. **REVERSED AND REMANDED.**


        Larry J. Pettigrew of Pettigrew Law Firm, P.C., Ankeny, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Dusty L. Clements of Clements Law and Mediation, LLC, Newton, guardian ad litem for minor child.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

A father appeals the adjudication of his child, J.R., as a child in need of assistance (CINA), arguing the State failed to present clear and convincing evidence under Iowa Code section 232.2(6)(b) and (c)(2) (2018).

**I. Background Facts and Proceedings.**

J.R. was born in December 2017. Shortly after his birth, it was reported that the mother and father had difficulties maintaining a clean and safe home.[1] A worker from the Iowa Department of Human Services (DHS) visited the home where the mother, father, J.R., the mother's father, and the mother's step-mother reside together. The DHS worker found the home to be adequately clean, organized, and appropriate for the family. The parents agreed to work with family safety, risk, and permanency (FSRP) services, and a worker came to their home every day for a thirty-day period between December and January. The FSRP worker reported the parents complied with requests, but the worker expressed concerns about both parents' mental health and whether the home would be adequately safe once J.R. becomes mobile. The State requested the court to adjudicate J.R. as a child in need of assistance.

At the adjudication hearing, the State presented evidence the father's parental rights to other children had previously been terminated. The father testified he has six children, including J.R. The father testified his first child was adopted by other parents. Three of his children are residing with their mother, the

---

[1] The mother filed a petition on appeal, but the supreme court dismissed her appeal as untimely. We acknowledge adjudication of the child as a CINA will continue as to the mother in the absence of an appeal.

father's ex-wife, and the father is unsure of their whereabouts. His parental rights to his fifth child, B.R., born to J.R.'s mother, were terminated in Minnesota in the summer of 2017.

At the hearing, the State submitted a parental-capacity evaluation and the termination order from the Minnesota termination proceedings. The parental-capacity evaluation included concerns the father was not able to follow medical recommendations, was overfeeding the child, did not have appropriate knowledge of developmental milestones, inappropriately held the baby, and had a history of mental-health and domestic-violence issues. In the Minnesota termination order, the court found there were concerns about the home being dirty, cluttered, and unsafe for a child, and concerns about the father's understanding of child development and ability to properly feed, dress, or bathe the child.

The Minnesota parental-capacity evaluation reflects the father has been admitted to inpatient mental-health services multiple times for suicidal ideation, with the most recent hospitalization in 2014. The Minnesota termination order found the father had a history of untreated mental-health issues, including bipolar disorder, generalized anxiety disorder, and other personality disorders with antisocial traits. The father was not taking his medications as prescribed at that time and had not followed through after multiple psychiatric evaluations. The evaluation found the father to have cognitive limitations. The father admitted in the Minnesota termination proceedings that he was unable to properly parent the child or meet the child's needs and would not be able to do so in the reasonable foreseeable future.

At the adjudication hearing in this matter, the father testified he was planning to move to another apartment with the mother and J.R. The mother testified they could better manage the cleanliness of their home in a new apartment because it would not be shared with the mother's father, step-mother, and their multiple cats. The father testified he was not currently taking any mental-health medication because his last doctor discontinued his medication. The father has not engaged in therapy as recommended by DHS. He also testified he was on the waiting list for mental-health services; his wife had made the appointment the day prior to the hearing. The parents submitted a letter from J.R.'s doctor stating J.R. is in good health, showing good growth, and is up to date on his vaccinations. Another letter from J.R.'s doctor indicates there were some initial concerns about overfeeding, but after discussion the parents were able to correct their behavior.

The court adjudicated J.R. as a child in need of assistance pursuant to Iowa Code section 232.2(6)(b) and (c)(2). At disposition, the parties were asked to sign a "stipulation" including a provision that J.R. remain a child in need of assistance. The parents' signature lines state "present." The court ordered custody remain with the mother and father. The father appeals.

## II. Standard of Review.

"We review CINA proceedings de novo." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). Our primary concern is the child's best interests. *Id.* "While we give weight to the trial courts findings of fact, we are not bound by them." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001). The State has the burden to prove the allegations by clear and convincing evidence. *In re B.B.*, 598 N.W.2d 312, 315 (Iowa Ct. App. 1999).

**III. Discussion.**

The father contends the State did not prove by clear and convincing evidence that the requirements under Iowa Code section 232.2(6)(b) or (c)(2) were met. The State asks us to interpret the grounds for adjudication broadly and look to the father's past behavior to affirm. The district court stated:

> The father . . . is before the Court with his sixth child. His first child "disappeared and was adopted." He does not know where his second, third, and fourth children are or the status of his parental rights. His fifth child was [B.R.] and his rights were terminated along with the mother's. The father also completed the "parental capacity evaluation" in December 2016 as a part of [B.R.]'s case.

The juvenile court quoted the Minnesota parental capacity evaluation at length, adopting its findings:

> Despite repeated teaching regarding how to properly care for his son, he has either been unable to learn the information or has actively defied or refused to comply with requests from providers to include properly caring for his son.
>
> [The father] is currently not adequately caring for his own basic needs to include hygiene, keeping his apartment clean, and taking his medications.
>
> . . . .
>
> Remediation of the aforementioned problems would be a lengthy process taking at minimum years but could also never be achieved due to his cognitive limitations. These problems will adversely affect his ability to adequately parent his son now as well as in the future. He would not be able to care for his son's basic needs, safety, or welfare. He would not be able to adjust his parenting techniques as he grows. His son would be at significant risk for abuse and/or neglect due to his inability to adequately care for him but also due to his unawareness of the danger that his lack of appropriate care could pose to him.

The juvenile court concluded by stating:

> The parents' deficiencies include their cognitive functioning, their mental health issues and failure to follow through with therapy and medications, their failure or inability to follow the instructions of service providers, their inadequate knowledge of child development,

their cleanliness/hygiene issues, and overall failure to show progress in their parenting after multiple classes and service interventions.

The court's findings as to J.R. appear to be based on the documents submitted in the child protection case in Minnesota involving another child. In contrast to the information in those documents, the FSRP worker in this case testified the parents responded to her recommendations. J.R.'s doctor also submitted a letter indicating the parents were able to adjust their feeding of J.R. after receiving instructions on how to not overfeed him. While in the Minnesota case the home was found to be unsanitary, the DHS worker in this case found the home to be satisfactory. There is no evidence from this case the father's untreated mental health or cognitive functioning poses a risk to the child. The court determined the State had failed to prove its case under Iowa Code section 232.2(6)(n) alleging inadequate cognitive functioning.

A child is a CINA pursuant to Iowa Code section 232.2(6)(b) when a "parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." Physical abuse or neglect in this context means "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." *J.S.*, 846 N.W.2d at 41. (quoting Iowa Code § 232.2(42)).

To find past "abuse or neglect," the State must prove three things by clear and convincing evidence: the child must have sustained a physical injury, the physical injury must have been the result of acts or omissions of the person legally

responsible for the child, and the physical injury must have been nonaccidental. *In re J.W.*, No. 14-0515, 2014 WL 3749419, at *2 (Iowa Ct. App. July 30, 2014). There is no evidence of any physical injury to J.R. Further, there is no evidence of past abuse or neglect from the father's Minnesota termination case. *See J.S.*, 846 N.W.2d at 43 (finding there was not an imminent likelihood of abuse or neglect where there were no specific prior instances of abuse or neglect, just the general characteristics of methamphetamine addiction). The juvenile court's apparent basis for adjudicating J.R. a CINA is the father's prior termination and untreated mental-health issues. The State has not presented any current evidence that the father's untreated mental health causes an imminent likelihood of abuse or neglect.

Under section 232.2(6)(c)(2), a child can be adjudicated a CINA if the child has suffered or is imminently likely to suffer harmful effects as a result of "the failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Harmful effects "pertains to the physical, mental or social welfare of a child." *J.S.*, 846 N.W.2d at 41. "[W]e have found such effects established when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *Id.* at 41–42.

Here, the primary concerns are the prior termination of the father's parental rights and his untreated mental-health issues, as the DHS worker found the home to be adequately clean and the FSRP worker testified the father complied with her parenting suggestions. These circumstances are unlike other cases in which we have affirmed adjudications under Iowa Code section 232.2(6)(c)(2). "Typically, an adjudication as a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) involves a parent who inadequately or insufficiently supervises a

child due to inability or lack of concern, placing the child at risk of harm." *In re E.R.*, No. 14-0850, 2014 WL 4937999 at *4 (Iowa Ct. App. Oct. 1, 2014). In *J.S.,* our supreme court stated, "[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care." 846 N.W.2d at 42. In *In re L.H.*, the supreme court found the child was imminently likely to suffer harmful effects when the mother continued to expose herself and her child to the father's domestic violence. 904 N.W.2d 145, 152 (Iowa 2017). In *In re W.I.*, we found the child was imminently likely to suffer harmful effects when the mother failed to exercise caution and burned her infant daughter. No. 00-1751, 2001 WL 1043240, at *3 (Iowa Ct. App. Sept. 12, 2001). In *In re D.T.,* the supreme court upheld finding the children were CINA under section 232.2(6)(c)(2) where the children were living in "squalid conditions, eating garbage, playing in raw sewage," and were allowed to "play unsupervised in the street." 435 N.W.2d 323, 326–28 (Iowa 1989).

Our courts have declined to affirm adjudication under Iowa Code section 232.2(6)(c)(2) in situations like this one, where there is no evidence the father is unable to exercise a reasonable degree of care in supervising the child. *See In re J.D.*, 18-0641, 2018 WL 3060280, at *3 (Iowa Ct. App. June 20, 2018) (finding evidence of the parent's health issues, without evidence of how it affected the parent's ability to supervise the children, was not sufficient for adjudication under 232.2(6)(c)(2)). We find the State has not proven there is clear and convincing evidence J.R. is imminently likely to suffer harmful effects. Despite the father's mental-health issues, he was able to respond to the FSRP worker's directions and

suggestions, and no evidence has been presented that he is unable to exercise a reasonable degree of care in supervising J.R.

We conclude the record before us does not contain clear and convincing evidence the child is imminently likely to be abused or neglected or to suffer harmful effects as a result of a lack of supervision. *See* Iowa Code § 232.2(6)(b), (c)(2); *see also J.S.*, 846 N.W.2d at 40–42. Accordingly, we reverse the adjudication of J.R. on those grounds and remand for dismissal of the State's petition.

**REVERSED AND REMANDED.**