# IN THE COURT OF APPEALS OF IOWA

No. 18-0558
Filed September 12, 2018

**IN THE INTEREST OF B.B. and E.B.,**
**Minor Children,**

**S.B., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Page County, Amy L. Zacharias, District Associate Judge.

A father appeals the juvenile court order adjudicating two children in need of assistance. **AFFIRMED IN PART AND REVERSED IN PART.**

Ryan M. Dale, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Vicki R. Danley, Sidney, guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A father, Seth, appeals a juvenile court order adjudicating two of his children, E.B. and B.B., in need of assistance, under Iowa Code section 232.2(6)(b) (2017). He contends the State did not present clear and convincing evidence he engaged in physical abuse or neglect or was imminently likely to do so. He also argues continued adjudication is not in the children's best interests. We find adjudication is supported as to his son B.B. but not his daughter E.B.[1] Therefore, we affirm in part and remand in part.

## I. Facts and Prior Proceedings

This family came under the court's jurisdiction in November 2017 when the Iowa Department of Human Services (DHS) concluded a founded child-abuse assessment against Seth for physical abuse of thirteen-year-old B.B. The teenager has a history of severe behavioral problems. He attends an alternative school and has an individualized education program. The record contains numerous reports of B.B.'s threatening and aggressive behaviors in school. B.B. attends counseling for a host of mental-health diagnoses, including disruptive mood dysregulation disorder, oppositional defiant disorder, and attention deficit disorder.

On November 8, 2017, Seth "grounded" B.B. and told him to stay in his bedroom, but B.B. would not cooperate. After B.B. came into the living room, Seth

---

[1] We review child-in-need-of-assistance (CINA) proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40–41 (Iowa 2014). CINA determinations must be based upon clear and convincing evidence. *Id.* While we are not bound by the juvenile court's fact findings, we give them weight. *Id.* "As in all juvenile proceedings, our fundamental concern is the best interests of the child." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001).

returned his son to the bedroom and "hog-tied" his hands and feet behind his back with a cord. When B.B. slipped from the restraints, Seth dragged B.B. by the arm through the house back to his bedroom. The struggle left a four-inch-square scrape on B.B.'s back. B.B. also alleged when he grabbed a doorframe, Seth punched him in the chest. No visible injury resulted from the alleged punch. Two of Seth's other children—nine-year-old E.B. and seventeen-year-old T.B—were home at the time. Seth's two eldest children were over eighteen years of age.

During the abuse assessment, a child protective services worker interviewed E.B., who was in fifth grade. She recalled Seth and B.B. were "flailing around" until Seth grabbed B.B.'s arm and dragged him back to his room. She did not see her brother tied up. She said her parents discipline her by sending her to her room as well, but B.B. refuses to listen.

The record shows Seth has physical limitations from a severe whiplash injury that ruptured a disk and permanently damaged his spinal cord. He walks with the assistance of a cane. Seth also takes medication for his diagnosed anxiety disorder and depression and has been seeing a mental-health counselor.

After the early November events, the juvenile court removed B.B. and E.B. from Seth's care and placed them with their mother, who subsequently filed for divorce from Seth. On February 11, 2018, the juvenile court adjudicated B.B. and E.B. as CINA, finding the November 8 incident to be physical abuse. The court decided Seth and B.B. needed to engage in family therapy. The court also ordered Seth to obtain a mental-health evaluation and follow all recommendations of the provider. It concluded the animosity between father and son leading to the physical abuse required continued placement of the children with their mother.

One month later, in its March 2018 dispositional order, the court found continued removal and adjudication of the children was necessary. While Seth had not participated in court-ordered mental-health treatment, he had engaged in counseling services through Midwest Mental Health. The court declared: "Until progress is made with [B.B.] in therapy, no visitation will be offered between Seth and [B.B.]" The court noted Seth was attending visitation with E.B. The court faulted Seth for not progressing to unsupervised visits with B.B. but also stated the following:

> [B.B.] has informed DHS that he does not want to see his father at this time. DHS has contacted . . . [B.B.'s] counselor, to see what his recommendations are regarding contact between [B.B.] and his father. [The counselor] makes the following recommendation:
>
>> At this point in time, neither client nor his mother see the benefit of initiating visits with client's father. I recommend that visits . . . be postponed until client demonstrates that he can refrain from verbal and physical aggression.

Seth perfected an interlocutory appeal from these orders.

## II. Analysis

In his petition on appeal, Seth poses two questions: First, did the juvenile court correctly conclude both children are CINA under Iowa Code section 232.2(6)(b)? And second, is the CINA adjudication in their best interests?

### A. Statutory grounds for adjudication

The court adjudicated both B.B. and E.B. under Iowa Code section 232.2(6)(b), which defines CINA as "an unmarried child . . . [w]hose parent . . . has physically abused or neglected the child, or is imminently likely to abuse or neglect the child." The statutory phrases—"physical abuse or neglect" and likely

"abuse or neglect"—are "terms of art" in the adjudication context. *J.S.*, 846 N.W.2d at 41. "Within chapter 232, . . . [they] mean 'any nonaccidental physical injury suffered by a child as the result of acts or omissions of the child's parent . . . .'" *Id.* (quoting Iowa Code § 232.2(42)).

**Welfare of B.B.** Seth argues the State did not offer clear and convincing evidence B.B. should be adjudicated as a CINA. Seth maintains B.B.'s extreme behavioral challenges often require physical restraint and the amount of force Seth used in November 2017 was not excessive.

"Our statutory and case law do provide that parents have a right to inflict reasonable corporal punishment in rearing their children." *In re B.B.*, 598 N.W.2d 312, 315 (Iowa Ct. App. 1999). In evaluating "whether the punishment crosses the line from corrective to abusive, the court looks at the amount of force used while taking into account the child's age, physical condition, and other characteristics as well as . . . the gravity of the child's misconduct." *Id.* at 315–16. Plus, "raising a child with behavioral issues is challenging." *In re D.B.*, No. 17-0740, 2017 WL 4317337, at *6 (Iowa Ct. App. Sept. 27, 2017). But physical abuse is intolerable even with a difficult child. *Id.*

Upon our de novo review, we conclude the State offered clear and convincing evidence to support CINA adjudication as to B.B. It is true the teenager's aggressive and defiant behaviors are significant and ongoing. As the juvenile court aptly noted, "handling a child with this severe of behavioral problems would be daunting." But Seth's act of "hog-tying" his son's legs and arms behind his back was not an appropriate or proportional response to B.B.'s relatively minor infraction of not staying in his bedroom. Nor was dragging B.B. through the house

by one arm, scraping his back. Seth's conduct "crossed the line from corrective to abusive action." *See B.B.*, 598 N.W.2d at 316; *see also In re A.O.*, No. 01-1445, 2002 WL 1973910, at * 5 (Iowa Ct. App. Aug. 28, 2002) (concluding father's actions crossed the line from correction to abuse when he chased the child through the house and beat him with a belt leaving bruises). We affirm the CINA adjudication as to B.B.

**Welfare of E.B.** Seth next argues the State did not show clear and convincing evidence B.B.'s younger sister, E.B., also should be adjudicated as a CINA. On this point, we agree with the father. Indeed, the State's CINA petition asserts facts about B.B. alone. E.B. is referenced only in the case caption.

In its February 2018 order, the court determined, "While [E.B.] was not involved in the physical abuse on November 8, 2017, she should be adjudicated in this matter to ensure she is also safe from physical abuse." In its March dispositional order, the court stated:

> E.B. is currently in fifth grade and attends school . . . . E.B. is reported to be very smart and currently has all A's and one B+. E.B. plays the French horn and is also in honor choir. E.B. is reported to be healthy with no medical concerns.
> . . . .
> The Child in Need of Assistance adjudication is continued as clear and convincing evidence exists to support the original grounds for adjudication.

The court made no finding E.B. suffered or was imminently likely to suffer a nonaccidental physical injury resulting from acts or omissions of her father. Unlike her brother B.B., E.B. presents no behavioral or mental-health concerns. The record shows no inappropriate discipline directed toward E.B. She told a worker when she is sent to her room, she complies.

The State insists the juvenile court must protect "other children in the home from the same parents or custodians" who are abusive to children with behavioral issues, relying upon *D.B.*, 2017 WL 4317337, at *6. *D.B.* involved five children, one of whom was singled out by the parents for particularly abusive treatment. *Id.* But there, the record showed the other children had also been physically disciplined. *Id.* Additionally, the court adjudicated the other children not under subparagraph (b) for an imminent likelihood of abuse or neglect, but under subparagraph (c)(2) based on its finding they "suffered or [were] imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child[ren]'s parent . . . to exercise a reasonable degree of care in supervising the child[ren]." *Id.* The court determined the parents "created or permitted a home environment contrary to the best interests of the children by the habitual and cruel mental and physical abuse inflicted upon" the targeted child. *Id.* The court concluded, "[A]dverse consequences may arise where the [abusive] conduct is pervasive and unavoidable" by the other children. *Id.*

Our record reveals no evidence E.B. was physically disciplined, nor of an imminent likelihood Seth would mistreat her as he did B.B., because she did not have B.B.'s defiant disorders. *Cf. In re A.F.*, No. 08-0217, 2008 WL 942536, at *2 (Iowa Ct. App. Apr. 9, 2008) (finding all children in family imminently likely to be abused or neglected even though only two suffered demonstrable injuries because the record showed the mother hit all the children at various times). Further, the State made no allegation adjudication was appropriate for E.B. under section 232.2(6)(c)(2). Because the State did not offer clear and convincing evidence to

prove E.B. has been or is imminently likely to suffer abuse or neglect, we reverse her CINA adjudication.

## B. Best-interests evaluation

Seth argues adjudication as CINA is not in the children's best interests. We agree as to E.B. but disagree as to B.B.

The juvenile court found continued adjudication to be appropriate because Seth had not completed court-ordered services "including but not limited to mental health therapy." Seth was under considerable stress when he crossed the line with his son. Although Seth was seeing a counselor, the visits were infrequent, and Seth had not obtained a mental-health evaluation as ordered. By the time of disposition, Seth had the added stress of the children's mother's initiation of divorce proceedings. A program director at B.B.'s school recommended visits with Seth be postponed until B.B. could gain better control of his verbal and physical aggression. Given Seth's strained relationship with B.B., continued removal from his father's care is currently in B.B.'s best interests. *See In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) ("In determining the best interests of the child, 'we look to the parent['s] past performance because it may indicate the quality of care the parent is capable of providing in the future.'" (quoting *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006))).

Turning to E.B., because we do not find clear and convincing evidence to support CINA adjudication, we likewise conclude her best interests do not require removal from Seth's care. Her visitation with Seth raised no safety issues.

To summarize, we affirm adjudication of B.B., but reverse as to E.B., and remand for dismissal of the CINA petition as to E.B.

**AFFIRMED IN PART AND REVERSED IN PART.**

Vogel, J., concurs; Danilson, C.J., concurs specially.

**DANILSON, Chief Judge** (concurring specially)

I write separately to expand upon why *In re D.B.*, No.17-0740, 2017 WL 4317337, at *6 (Iowa Ct. App. Sept. 27, 2017), does not serve to support adjudication of E.B. in this case. We did not conclude in *D.B.* that the abuse of one child in the family will always suffice to adjudicate all children in the family home as a child in need of assistance (CINA). Rather, in *D.B.*, the other children in the home both observed, and could not avoid, the continuous abuse of a behaviorally-challenged child to the point that the home environment had essentially normalized the abuse. Each case is fact dependent and the outcome will also depend upon the grounds alleged under Iowa Code section 232.2(6) (2017). Here, I agree with the majority the State's proof was lacking to adjudicate E.B. a CINA.