**IN THE COURT OF APPEALS OF IOWA**

No. 20-1639
Filed April 14, 2021

**IN THE INTEREST OF L.S. and L.O.,**
**Minor Children,**

**ERIN E. ROMAR, Guardian Ad Litem,**
        Appellant,

**STATE OF IOWA,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


        The State and the children's guardian ad litem appeal the district court's

order modifying the dispositional order.  **AFFIRMED**.


        Erin E. Romar of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor children.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellant State.

        Ronald W. Kepford, Winterset, for appellee father of L.S.

        Deborah L. Johnson of Deborah L. Johnson Law Office PC, Altoona, for

appellee mother.

        Yvonne Naanep, Des Moines, for appellee father of L.O.


        Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Two children, born in 2009 and 2011, were removed from their parents' care based on the parents' "active[] methamphetamine use." The children were placed with their maternal grandmother and step-grandfather. Also in the home was the mother's oldest child, who was later moved to her great-grandmother's home and is not a subject of this appeal.

The juvenile court adjudicated the two children in need of assistance. The court later filed a dispositional order confirming the adjudication and placement of the children in the temporary legal custody of the grandparents.

In time, the children's mother moved to modify the placement. Following an evidentiary hearing, the juvenile court granted the motion. The court found "a material change in circumstances" warranting placement of the children "outside the grandparents' custody." The court nonetheless ordered the children to remain with their grandparents "temporarily" while the department of human services "explore[d] possible alternative relative placement[s] or suitable other person placement[s]" or foster care. The State and the children's guardian ad litem appealed. The supreme court granted their motion to stay the order pending resolution of the appeal. The case was transferred to this court for disposition.

The State argues "the juvenile court . . . was not justified in modifying disposition because the children's best interests were served by remaining in the custody of their grandparents and it remained the least restrictive placement appropriate under the circumstances." The guardian ad litem similarly asserts "[a] move from the grandparents to foster care" would not be in the children's "best interests."

We begin by considering the standard for modification of a dispositional order. Iowa Code section 232.103(4) (2020) provides for modification under the following circumstances:

> a. The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> b. The purposes of the order cannot reasonably be accomplished.
> c. The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.
> d. The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Before this provision was enacted, the supreme court held "[a] modification of custody or placement requires a material and substantial change in circumstances." See In re R.F., 471 N.W.2d 821, 824 (Iowa 1991). After its enactment, the court of appeals concluded "[t]he juvenile court need not find a substantial change in circumstances as a prerequisite to modification of a dispositional order pursuant to Iowa Code section 232.103(4)." In re M.M., No. 16-0548, 2016 WL 4036246, at *4 (Iowa Ct. App. July 27, 2016). This court has since applied both standards. See In re C.K., No. 18-1708, 2018 WL 6719419, at *1 n.1, 2 (Iowa Ct. App. Dec. 19, 2018) (noting two approaches to consideration of disposition modification orders and canvassing court of appeals opinions applying both). The State argues for the statutory standard, and the guardian ad litem applies the substantial-change standard. We will apply both, reviewing the record de novo.

The juvenile court found the grandfather "struck [the oldest child] on the face, causing her to bleed from her mouth" and he locked the child in her brother's room with the light off. The record supports the finding. A child protective worker assigned to investigate the occurrence testified that the child was escorted home by police following a curfew violation and, when she returned and told the step-grandfather, he "slapped her face" and "she tasted blood in her mouth." The worker reported blood dripping from her mouth. She determined the child "was placed into a bedroom . . . that could lock from the exterior of the door versus the interior" and there was "a light switch in the basement" that allowed a person "to turn off the main electricity to that bedroom."

Having found support for the juvenile court's finding, we must determine whether, in light of this episode, the purpose of the dispositional order confirming placement of the two younger children with their grandparents could no longer be accomplished. *See* Iowa Code § 232.103(4)(b). Our evaluation of the purpose is informed by an administrative rule governing foster parent care. The rule states:

> *Restrictions on training and discipline.* Child training and discipline shall be handled with kindness and understanding.
> a. A child shall not be locked in a room, closet, box, or other device.
> b. No child shall be deprived of food as punishment.
> c. No child shall be subjected to verbal abuse, threats or derogatory remarks about the child or the child's family.
> d. The use of corporal punishment is prohibited.
> e. Restraints shall not be used as a form of discipline.
> (1) Reasonable physical force may be used to restrain a child only in order to prevent injury to the child, injury to others, the destruction of property, or extremely disruptive behavior.
> (2) Upon approval of the department, the foster parent may use restraints only in accordance with the written plan of a licensed mental health professional who is working with the child and the foster parents.

Iowa Admin. Code r. 441–113.18(2). At least for licensed foster parents, the department prohibits the use of corporal punishment. *See* Iowa Code § 234.40; Iowa Admin. Code r. 441–113.18(2)(d); *cf. Hildreth v. Iowa Dep't of Human Servs.*, 550 N.W.2d 157, 159 (Iowa 1996) ("[P]arents do have a right to inflict reasonable corporal punishment in rearing their children."). While there is no indication the step-grandfather was a licensed foster parent, we assume without deciding the same standards would apply to a relative caretaker who has taken custody of abused or neglected children.

The step-grandfather's physical aggression toward the oldest child subverted the safety of the younger two children's placement in his home. The fact that the child protective worker declined to make a finding of physical abuse or denial of critical care against the step-grandfather is not dispositive. The step-grandfather hit the oldest child hard enough to cause bleeding from her mouth. While "[t]here was no witness to additional bleeding from the mouth or any report from the police when they were at the home that substantiated that information," the worker's testimony that the incident was "minor, isolated, and unlikely to reoccur" proved not to be the case.

The juvenile court found that the grandfather struck one of the two younger children with a paddle. The finding was partially supported by the step-grandfather's admission that he "swatted" the child "on the butt with [his] hand" "as an attention getter." Although he denied using a paddle and told a department social worker about the incident, the episode undermines the child protective worker's testimony that his aggressive actions were confined to the oldest child.

Also troubling is the grandparents' lack of candor on several issues. Most glaring is the step-grandfather's insistence that he "never paid attention to the locks." There was at least a suggestion those locks were on the inside of the bedrooms when the home was sold to the grandparents. Based on the step-grandfather's testimony on this and other matters, the juvenile court found he lacked credibility. We give weight to that credibility finding.

The line between corrective physical action and abusive action is thin. *See In re B.B.*, 598 N.W.2d 312, 316 (Iowa Ct. App. 1999); *see also Hildreth*, 550 N.W.2d at 160 (Harris, J., dissenting) (noting father's actions "were painstakingly deliberate" and it was "preposterous to pretend [the father] did not expect a physical injury to result"). Even if the step-grandfather could use corporal punishment, his history of physical discipline dating back to his treatment of the children's mother augers poorly for the safety of the two children. On our de novo review, we agree with the juvenile court that the purposes of the dispositional order could not be accomplished in light of the step-grandfather's serious transgressions. We also conclude the two episodes amounted to a substantial change of circumstances warranting a modification of the dispositional order.

In reaching this conclusion, we recognize that one of the children told his therapist "on several occasions that he would like to remain living with his grandmother at this time." The therapist referenced the child's "anxiety and upset over the prospect of going to foster care" and opined that it was not "in his best interest to move from placement with his grandmother unless absolutely necessary." We do not minimize the trauma associated with another move. And neither did the juvenile court. To mitigate the upheaval, the court ordered the

children to "temporarily stay in the custody of [the] grandparents" while the department "explore[d] possible alternative relative placement or suitable other person placement." The court only ordered placement in foster care "[i]f a less restrictive placement [could not] be located" and ordered the foster home to be close to the mother's location.

Our opinion could end here. But, for completeness, we will also address the court's remaining findings in support of modification.

The juvenile court partially based the decision to modify the dispositional order on a finding that the "grandparents failed to notify [the department] or providers" about the oldest sibling's "continued . . . use [of] illegal substances while residing in their home." A department caseworker involved with the family testified otherwise. He stated the step-grandfather told him the oldest sibling "had been smoking pot." He continued, "I think they reported it to who I believe they should have." On our de novo review, we are persuaded the failure-to-report finding lacks evidentiary support.

The juvenile court also found "the grandparents have provided false information to [the department] regarding [the m]other." The court cited the grandmother's report that "she had to end a phone conversation between [the m]other and the children due to [the m]other engaging in an inappropriate conversation about other children being removed from their parents." The court stated a surreptitious recording made by the mother indicated "there was a brief mention of this, but [the m]other quickly redirected the conversation to appropriate topics" and "[a]t no time did [the g]randmother intervene and end the phone call."

Our review of this finding is hampered by the absence of the recording in our record. That said, the only key fact in dispute is whether the grandmother correctly reported that she was the one to end the call. She testified she was charged with supervising the call; the mother began talking to the children about a friend's case in which the friend's children were removed; and she ended the call and reported the incident to the department because she "was advised" this was the correct course of action if the calls were "not appropriate." Even if the grandmother's recollection of who ended the call was faulty, the key fact is that the grandmother reported what she believed to be inappropriate conduct on the mother's part, as instructed. We are not persuaded the incident required modification of the dispositional order either under the statute or under common law.

The same holds true for the next incident cited by the juvenile court, involving the oldest child's disappearance and subsequent discovery. The court stated the grandparents went to pick up the child after she was located and, "[d]uring the two hour car ride, where [the g]randmother was not driving, she did not bother to notify [the m]other the child had been safely located and [the m]other continued to search for the child." The grandmother testified she notified the mother "[w]ithin ten minutes of knowing [the child] was missing." Because the mother's phone was dead, she did so by calling the mother's friend with whom the mother was staying. When the child was located, the grandmother called the juvenile detention center to find out where to pick her up and was told the child's mother was on the other line. The mother then phoned the grandmother while the grandmother was in the car and they "discussed" the fact that the child had been

"found." The grandmother testified the mother was not concerned about the status of the child because "she knew she was safe." The grandmother's detailed testimony about the episode dispels concerns that she wished to extricate the mother from the children's lives. She testified her goal was quite the opposite—to have the children maintain a relationship with the mother

But even if the grandmother's testimony were discredited, a department employee testified a three-hour delay in informing the mother her oldest child had been found was not concerning to him, especially in light of the circumstances, including retrieval of the child in the middle of the night. On our de novo review, we conclude the delay, if any, in informing the mother of the oldest child's whereabouts did not warrant a transfer of the younger two children from the grandparents' care either under the statutory or common law modification standard.

While several grounds for modification do not find support in the record, the two grounds premised on physical discipline do. Based on those two grounds, we affirm the juvenile court's modification of the dispositional order.

**AFFIRMED.**